1   Michael Zoldan; AZ Bar No. 028128
2   **ZOLDAN LAW GROUP, PLLC**
    8100 E. Indian School Road
3   Suite 103
    Scottsdale, AZ 85251
4   Tel & Fax: 480.442.3410
5   mzoldan@zoldangroup.com

6   Zachary Price; AZ Bar No. 028464
7   **COOK & PRICE, PLC**
    60 E. Rio Salado Road
8   Suite 900
    Tempe, AZ 85281
9   Tel: 480.366.5828
    zprice@cookpricelaw.com
10  docket@cookpricelaw.com

11
12  Attorneys for Karen Williams

13              **UNITED STATES DISTRICT COURT**

14              **DISTRICT OF ARIZONA**

15  **Karen Williams**, an Arizona Resident,          **Case No.**
16
                        Plaintiff,
17
        v.
18                                                    **VERIFIED COMPLAINT**
19  **Alhambra Elementary School District
    No. 68**, a political subdivision of the State
20  of Arizona;  **Alhambra  Elementary              (Jury Trial Requested)**
    School District No. 68, Board Member
21  Robert Zamora**; Alhambra Elementary
    **School District No. 68, Board Member
22  Ray    Martinez;**    and    **Alhambra
    Elementary   School   District   No.   68,
23  Board Member Mari Alvarado**,
24
                        Defendants.
25

26

27          Plaintiff  Karen  Williams  ("**Williams**"),  for  her  Verified  Complaint  against

28  Defendants Alhambra Elementary School District No. 68 and its Board Members, Robert

ZOLDAN LAW GROUP, PLLC

8100 E. Indian School Rd. Suite 103 Scottsdale, Arizona 85251
Tel & Fax: 480.442.3410 – mzoldan@zoldangroup.com

Zamora, Ray Martinez, and Mari Alvarado (hereinafter collectively referred to as "**Defendants**" or "**Alhambra**" or the "**Board**" unless identified otherwise) hereby alleges as follows:

**PARTIES**

1.      Plaintiff is, and at all times relevant hereto was, a resident of Maricopa County, Arizona.

2.      Defendant Alhambra Elementary School District No. 68 is a political subdivision of the State of Arizona operating within Maricopa County, Arizona.

3.      Defendant Robert Zamora is, and at all times relevant hereto was, a Board Member of Defendant Alhambra Elementary School District No. 68.     At all times relevant hereto, Zamora was acting, purporting, or pretending to act in the performance of his official duties.

4.      Defendant Ray Martinez is, and at all times relevant hereto was, a Board Member of Defendant Alhambra Elementary School District No. 68.     At all times relevant hereto, Martinez was acting, purporting, or pretending to act in the performance of his official duties.

5.      Defendant Mari Alvarado is, and at all times relevant hereto was, a Board Member of Defendant Alhambra Elementary School District No. 68.     At all times relevant hereto, Alvarado was acting, purporting, or pretending to act in the performance of her official duties.

6.      Plaintiff is informed, believes, and thereon alleges that each of the Defendants were, at all times relevant to this action, the agent, employee, representing partner, parent companies, subsidiaries, and/or joint venture of the other Defendants, and

that such Defendants were acting within the course and scope of that relationship.

7.  Plaintiff is further informed, believes, and thereon alleges that each of the Defendants herein gave consent to, ratified, and authorized the acts of all other Defendants, as alleged herein.

8.  Defendants, and each of them, are sued in both their individual and corporate capacities.

9.  Defendants are jointly and severally liable for the injuries and damages sustained by Plaintiff.

## JURISDICTION AND VENUE

10.  All acts complained herein occurred in Maricopa County, Arizona, and this Court has jurisdiction over the parties and subject matter set forth in this Verified Complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1983, and 42 U.S.C. § 1981.

11.  This Court has federal question subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 in that the claims set forth in this Verified Complaint arise under federal law.

12.  Plaintiff's state law claims are sufficiently related to her federal claims that they form part of the same case or controversy. This Court therefore has supplemental jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C. § 1367.

13.  The employment practices alleged to be unlawful were committed within, and had their primary effect in, the jurisdiction of the United States District Court for the District of Arizona.

14.  Plaintiff was, at all relevant times, an employee of Defendant Alhambra

ZOLDAN LAW GROUP, PLLC
8100 E. Indian School Rd. Suite 103 Scottsdale, Arizona 85251
Tel & Fax: 480.442.3410 – mzoldan@zoldangroup.com

Elementary School District No. 68.

15.     At all relevant times, Defendant Alhambra Elementary School District No. 68 has continuously been an employer, employing fifteen or more employees within the meaning of Title VII.

16.     Plaintiff has exhausted all administrative and statutory prerequisites necessary to commence this action, and therefore jurisdiction is proper.

## FACTUAL ALLEGATIONS

17.     Williams officially commenced employment with Alhambra as its superintendent on or around July 1, 2010.

18.     Williams, an African-American woman, was subjected to racial discrimination and retaliation by Defendants.  Given Plaintiff was the superintendent of Alhambra, her 'supervisors' were the then presiding board members of the school district.

19.     At the time of her hire, Alhambra's board consisted of five members: (1) Robert Zamora; (2) Mari Alvarado; (3) Paul Enniss; (4) Elizabeth Sanchez (President); and (5) Adam Lopez Falk.

20.     Defendant Zamora was opposed to hiring Williams in the first place. Zamora sought to ensure that Williams's starting salary remained significantly below the superintendent she was replacing.

21.     Defendant Zamora sought to influence Williams to employ Latinos in positions of power and in direct support to Williams.  For example, Zamora approached Williams and stated that he believed the staff of the District, and particularly two open assistant superintendent positions (who would be directly reporting to Williams), should reflect the predominately Latino community demographic.  Williams responded that she

ZOLDAN LAW GROUP, PLLC

8100 E. Indian School Rd. Suite 103 Scottsdale, Arizona 85251
Tel & Fax: 480.442.3410 – mzoldan@zoldangroup.com

would recommend and bring forth the best and most qualified candidates for the positions regardless of race, color, or national origin.  Zamora aggressively and forcefully reiterated that as he had told Williams' predecessor in the past, and was informing her now, that the District superintendent should reflect the Latino community demographic. Williams reiterated her belief that she, as the District's superintendent, should be the most qualified person available and that she was in fact the most qualified for the District's superintendent role.

22.    Williams excelled during her entire tenure as Alhambra's superintendent, earning exemplary performance reviews and otherwise exceeding all performance objectives required of her.

23.    As Alhambra's superintendent, Williams's performance reviews were based upon six criteria (1) Management; (2) Education; (3) Governing Board; (4) Personnel; (5) Community; and (6) District Goal Implementation.  Alhambra used these six criteria to rank Williams's performance on a scale of 1-9, with a score of "9" being the highest and "1" the lowest.

24.    Williams's 2010 performance review was exemplary, earning an average of approximately an "8" across all metrics.  However, Zamora refused to submit a formal 2010 performance review for Williams.

25.    Williams's 2011 review was exemplary.  Williams earned an average of approximately an "8.5" across all metrics.

26.    Williams's 2012 review was exemplary.  Williams earned an average of approximately an "8.5" across all metrics.

27.    As a result of her success as superintendent, Williams sought to renegotiate

ZOLDAN LAW GROUP, PLLC
8100 E. Indian School Rd. Suite 103 Scottsdale, Arizona 85251
Tel & Fax: 480.442.3410 – mzoldan@zoldangroup.com

her employment contract in or around April 2012.

28.     Williams was offered, and accepted, a contract on or around May 3, 2012 to continue as Alhambra's superintendent.  Pursuant to the contract, Williams's employment was to formally commence on July 1, 2012 and was to continue until June 30, 2015. Williams was to be paid $185,000.00 in base salary for fiscal year 2013, and was eligible for annual base salary increases for fiscal years 2014 and 2015 commensurate with the average percentage increases on the teacher salary schedule for the corresponding year.

29.     At or around the time Williams executed her 2012 contract, Alhambra's board was comprised of Zamora, Alvarado, Lopez Faulk, Sanchez, and Billie Foltz.  The only change between the 2010 board and the 2012 board was Billie Foltz replaced Paul Enniss.

30.     On or around January 1, 2013, Zamora was elected president of the Board.

31.     On July 23, 2013, Williams met with then board member (and former president) Elizabeth Sanchez at Sanchez's request.  According to Sanchez, Zamora informed her that he intended to end Williams's career at Alhambra because she did not reflect the Latino racial demographic of the community.  Sanchez informed Williams that Zamora and Defendant Alvarado intended to conspire together to ensure that Alhambra engaged in discriminatory practices with respect to furthering the agenda to replace Williams and her peers with Latino employees.  Williams insisted that she—as well as all other Alhambra employees and potential employees—should be assessed based on their qualifications, not because of their race or national origin.

32.     Also according to Sanchez, Zamora informed her that he intended to end Williams's career at Alhambra because she did not recognize or otherwise endorse an

ZOLDAN LAW GROUP, PLLC

8100 E. Indian School Rd. Suite 103 Scottsdale, Arizona 85251
Tel & Fax: 480.442.3410 – mzoldan@zoldangroup.com

organization called the Alhambra District Education Association ("**ADEA**").

33.     At that time, and all times thereafter, ADEA has not met the membership threshold for recognition as the District's official union, which requires the membership of fifty percent (50%) plus one of the certified teachers of the District.

34.     According to ADEA's website (www.adealeads.org), ADEA "is a professional organization that exists to develop positive working relationships with all stakeholders of the Alhambra Elementary School District including teachers, students, administrators, board members, and the community at large."

35.     Upon information and belief, ADEA made financial campaign contributions to Zamora when he ran for his Board position as well as his Board presidency.

36.     Upon information and belief, ADEA made financial campaign contributions to Alvarado when she ran for her Board position.

37.     Consistent with, and shortly after, Williams's conversation with Sanchez on August 1, 2013, Williams was informed by other Alhambra employees that Zamora intended on replacing her with a male Latino superintendent.  Other  employees further reiterated that Zamora intended to remove Williams from Alhambra in order to procure union recognition status for ADEA.

38.     Williams and Alhambra's human resources director, Michael Rivera, conducted an investigation into the allegations that the Board intended to replace Williams with a male Latino that would hastily recognize ADEA's sought union status.

39.     After interviewing many witnesses, it became clear to Williams that the allegations were based in fact: it was indeed Zamora and the Board's intention that she be

removed in favor of a pro-ADEA Latino male candidate.

40.    As a result of the patently discriminatory conduct of the Board, Williams complained to the District's attorney, Mr. Robert Haws, with the expectation that her complaint would ameliorate what was becoming an increasingly hostile work environment.

41.    Williams complained to Alhambra and Haws that the Board was engaging or attempting to engage in discriminatory hiring practices, creating a hostile work environment, violating Arizona's Open Meeting Law, engaging in conflicts of interest, and retaliating and discriminating against her as a result of her refusal to recognize ADEA as the District union.

42.    Following her complaint, Williams was again confronted by Sanchez who reiterated to Williams that Zamora and Alvarado still intended to oust her as superintendent only to replace her with a Latino male.

43.    On October 16, 2013, a board meeting was scheduled and an agenda was issued.  However, prior to the start of the October 16, 2013 board meeting, persons in attendance witnessed board member Adam Lopez Falk and Zamora enter the executive boardroom and shut the door.  Shortly thereafter, Defendant Alvarado followed the other board members into the room.    After some time, the three board members returned to begin the board meeting.    At the conclusion of this meeting, persons in attendance witnessed board member Lopez Falk meeting with Nathan Ewbank[1], and witnessed Lopez Falk hand something to Mr. Ewbank, which Mr. Ewbank then placed into his brief case.

44.    At or around the same time frame Williams learned of Zamora and the

---

[1]    Mr. Nathan Ewbank was, at this time, the President of ADEA.

ZOLDAN LAW GROUP, PLLC

8100 E. Indian School Rd. Suite 103 Scottsdale, Arizona 85251
Tel & Fax: 480.442.3410 – mzoldan@zoldangroup.com

ZOLDAN LAW GROUP, PLLC
8100 E. Indian School Rd. Suite 103 Scottsdale, Arizona 85251
Tel & Fax: 480.442.3410 – mzoldan@zoldangroup.com

Board's discriminatory intentions, the Board was conducting its annual review of her performance (for year 2013).

45.     Williams received mostly positive scores in her 2013 performance review; however, she did receive more scores of "7" than in any of her previous years of employment as superintendent.  As justification for providing her with "7's" the Board admonished Williams for not furthering its agenda to engage in discriminatory hiring practices by hiring candidates that represented the Latino/Hispanic demographic of Alhambra's community.

46.     In response, Williams made another complaint to the Board on December 5, 2013.  Williams stated that as superintendent she was committed to follow Arizona laws and statutes, Title VII, Arizona Revised Statues, Title 41, and the Alhambra District governing Board Policy with respect to all employment decisions.  Williams specifically rejected the Board's initiative to hire "consistent with community demographics" as follows:

> At no time do our administrators consider any of the above mentioned criteria [race, color, religion, sex, age, national origin, and disability] as factors on which to base our recommendations for employment. As Superintendent of the Alhambra School District, I remain committed to enforcing all policies and laws, both Federal and State, and ensuring that all applicants are treated in a fair and equitable manner.

47.     Two days later, on December 7, 2013, Board member Foltz expressed, in writing, her disagreement with Zamora and the Board's discriminatory agenda.

48.     On January 6, 2014, Williams received a phone call from President Zamora.  Zamora informed Williams that he and two other Board members wanted to have further discussion in executive session regarding the return of "executive director" titles to the now titled "assistant superintendents."  Williams asked who the other two

ZOLDAN LAW GROUP, PLLC
8100 E. Indian School Rd. Suite 103 Scottsdale, Arizona 85251
Tel & Fax: 480.442.3410 – mzoldan@zoldangroup.com

board members were, but Zamora refused to provide their names and further indicated that they "likely would not voice anything, as they usually leave [Zamora] holding the bag."   In response, Williams prepared an agenda item regarding the issue, and forwarded it to counsel for the District, Rob Haws, with respect to what she perceived was a violation of the Arizona Open Meeting Laws as a result of President Zamora's conversation with two other board members prior to voting.

49.    Into the 2014 school year, ADEA conducted a survey purporting to assess the learning conditions of the Alhambra District.   Based on the responses of former Alhambra employees according to the survey, ADEA sought to discuss in executive session the "alarming percentages pertaining to responses involving perceptions about employee morale, voicing concerns, and school safety."

50.    In furtherance and based on ADEA's "survey", Zamora informed Williams that he wanted to conduct an open meeting and/or executive session based on ADEA's findings.

51.    Williams cautioned Zamora of potentially unfavorable and unintended consequences of discussing ADEA's survey in an open meeting or executive session.

52.    Zamora refused Williams's caution and insisted that ADEA's survey be discussed in an executive session on April 17, 2014.

53.    On April 11, 2014, Williams met with Michael Rivera in connection with her concerns that Zamora was using ADEA to facilitate her termination.   Williams and Rivera contacted Haws and discussed, in part, the following:

i.    Williams long-standing concern that Zamora and the Board intended to end her employment as superintendent because she was not a

Latina/Hispanic;

ii.   Williams long-standing concern that Zamora and the Board intended to end her employment as superintendent because of Zamora and the Board's affiliation with ADEA;

iii.   Williams expressed her concern that Zamora and the Board intended on using ADEA's survey in open meetings and executive sessions to encourage a large group of people to congregate for the purpose of disparaging or otherwise casting doubt on Williams's performance as superintendent; and

iv.   Williams expressed her concern that Zamora and the Board intended to provide her with a negative 2014 performance evaluation as a pretextual reason for facilitating her termination;

v.   Williams stated that Zamora was an integral part of ADEA, and that he, ADEA, and the Arizona Education Association were acting in concert to facilitate her termination; and

vi.   Williams insisted that the foregoing matters be discussed in an open meeting and requested that Rivera and/or Haws inform Zamora and the Board of the subject matter of her complaint.

54.   Upon information and belief, Zamora and Defendants attempted to utilize ADEA to facilitate a pretextual reason to terminate or otherwise non-renew Williams's employment.

55.   During the April 17, 2014 Board Meeting, members of ADEA and the community at large shared their opinions regarding Alhambra matters, particularly

ZOLDAN LAW GROUP, PLLC

8100 E. Indian School Rd. Suite 103 Scottsdale, Arizona 85251
Tel & Fax: 480.442.3410 – mzoldan@zoldangroup.com

Williams's performance as superintendent.  Following the meeting, it remained clear to Williams that Alhambra intended to facilitate her termination based on discriminatory factors.

56.    Many teachers, administrators, support staff, parents, and community members shared with Williams that they were aware of Defendants' plan to terminate her based on unlawful discriminatory and retaliatory reasons.

57.    On September 23, 2014, ADEA held a 'community forum' led by three panelists, one of whom was Robert Zamora.  The community forum sought to solicit information about Williams in her capacity as Alhambra's superintendent.

58.    Consistent with its previous positions, ADEA's findings were largely negative with respect to Williams.

59.    On October 31, 2014, the Board was notified of its requirement to complete Williams's annual performance review.

60.    At this time the Board consisted of the following members: (1) Robert Zamora (president); (2) Elizabeth Sanchez (clerk); (3) Mari Alvarado; (4) Billie Foltz; and (5) Adam Lopez Falk.

61.    Williams's 2014 review was predominately positive, however, for the first time, she received scores of unsatisfactory (1-3).

62.    The unsatisfactory scores came from only one Board Member: Defendant Robert Zamora as follows:

     i.    Zamora gave Williams a "3" in the following Education category: Supervises methods of teaching, supervision, and administration in effect of the schools.  The other Board members gave Williams a

ZOLDAN LAW GROUP, PLLC

8100 E. Indian School Rd. Suite 103 Scottsdale, Arizona 85251
Tel & Fax: 480.442.3410 – mzoldan@zoldangroup.com

"9", "8", "9", and "8" in this category.

ii.  Zamora gave Williams a "3.5" in the following Education category: Keeps the public appropriately informed about the programs, practices, and issues in the District.  The other Board members gave Williams a "9", "9", "9", and "8" in this category.

iii.  Zamora gave Williams a "3.5" in the following Governing Board category: Takes prompt action to implement all directives of the Board.  The other Board members gave Williams a "9", "9", "8", and "7" in this category.

iv.  Zamora gave Williams a "3" in the following Governing Board category: Advises the Board on the need for new and/or revised policies.  The other Board members gave Williams a "9", "9", "9", and "8" in this category.

v.  Zamora gave Williams a "3" in the following Governing Board category: Informs and advises the Board about programs, practices, and problems of the schools, and keeps the Board informed of major activities operating under the Board's authority.  The other Board members gave Williams a "9", "9", "9", and "8" in this category.

vi.  Zamora gave Williams a "3" in the following Personnel category: Ensures that all employees are evaluated in accordance with the schedule established by the Board.  The other Board members gave Williams a "9", "9", "9", and "8" in this category.

vii.  Zamora gave Williams a "3.5" in the following Personnel category:

ZOLDAN LAW GROUP, PLLC

8100 E. Indian School Rd. Suite 103 Scottsdale, Arizona 85251
Tel & Fax: 480.442.3410 – mzoldan@zoldangroup.com

ZOLDAN LAW GROUP, PLLC

8100 E. Indian School Rd. Suite 103 Scottsdale, Arizona 85251
Tel & Fax: 480.442.3410 – mzoldan@zoldangroup.com

Determines assignments, defines the duties, and coordinates and directs the work of all employees of the District.  The other Board members gave Williams a "9", "9", "9", and "8" in this category.

viii.    Zamora gave Williams a "3.5" in the following Personnel category: Communicates all actions of the board relating to personnel matters to all employees; and receives from employees all communications made to the Board.  The other Board members gave Williams a "9", "9", "9", and "8" in this category.

63.    According to Alhambra's policy, any rating of unsatisfactory requires the Board attach specific information that justifies and supports such rating with direction for improvement.

64.    The Board was unable to support Zamora's unsatisfactory scores of Williams's alleged performance deficiencies.

65.    When Williams challenged the Board to justify Zamora's low scores, the Board was unable to do so and, as a result, removed the unsatisfactory comments from her 2014 performance evaluation.

66.    Also during this time frame, on or about December 1, 2014, Williams and the Board met in executive session to discuss extending or otherwise renewing her employment contract.  During this meeting, Zamora and Alvarado refused to discuss extending Williams's contract for more than one year in light of the upcoming changes to the Board's composition.

67.    In or around the end of 2014, the Board was undergoing membership changes.  As a result of the transition, Defendant Ray Martinez and Cathleen O'Neal

Franz were elected as Board Members.  Foltz retired and Sanchez lost her seat.  The new changes in membership were not scheduled to take effect until January 1, 2015.

68.     Upon information and belief, ADEA and/or AEA financially contributed and supported Martinez's election campaign.  With Martinez's election, Zamora and Alvarado could outvote the remaining Board members to fulfil their discriminatory and retaliatory agenda.

69.     On January 22, 2015, the Board and Williams met in executive session to resume discussions regarding an extension/renewal to her existing 2012 contract.

70.     By this time, the Board consisted of the following members: (1) Robert Zamora (president); (2) Ray Martinez; (3) Mari Alvarado; (4) Cathleen O'Neil Frantz; and (5) Adam Lopez Falk.

71.     In executive session, the Board offered Williams a one year extension to her 2012 contract.  The Board offered to pay Williams $198,763.00 in base salary for fiscal year 2016, and to increase her performance based pay by five percent (5.0%).

72.     Williams accepted the Board's offer above.

73.     After Williams accepted the Board's offer, she and the Board members reconvened from executive session to an open meeting.  In open meeting, Alvarado moved and O'Neil Frantz seconded that an additional one year contract be authorized for Williams according to the terms negotiated by the parties in executive session.

74.     Alvarado's motion to provide Williams with the contract renewal passed unanimously.

75.     The following day, January 23, 2015, Alhambra's attorney delivered to Williams's attorney an electronic written copy of the prior night's offered, and accepted,

ZOLDAN LAW GROUP, PLLC
8100 E. Indian School Rd. Suite 103 Scottsdale, Arizona 85251
Tel & Fax: 480.442.3410 – mzoldan@zoldangroup.com

contract of employment.

76.     On February 2, 2015, counsel for Williams and Alhambra's attorney discussed three minor and immaterial changes to the contract.  Williams suggested that:

i.      The contract specify Alhambra was hiring Williams through a third-party employment agency, Education Services Incorporated ("**ESI**"), instead of her personally;

ii.     The contract clarify that if Williams was able to perform the essential functions of her position with reasonable accommodations, that Alhambra would afford her such an opportunity before terminating the contract; and

iii.    The contract clarify that the Board could not revise Williams's performance based pay plan in light of the fact that the new contract was only a one year contract and any performance based modifications would therefore be inapplicable given Alhambra's policies with respect to reviewing superintendent.

77.     Counsel for the District summarily agreed and acknowledged the appropriateness of the issues set forth in 75(ii) and 75(iii) above, but indicated that the District would have to approve the ESI designation as set forth in 75(i), but that the District had a policy and practice of permitting administrators—such as Williams—to execute employment contracts through ESI (or a similar third-party agency).  Counsel for Williams explained that the District had already approved Williams's retirement to be effective June 30, 2015, and that as such, Williams's employment through ESI would be appropriate and therefore immaterial.   In support thereof, counsel for Williams

electronically mailed to counsel for the District a copy of the board minutes which had approved Dr. Williams's retirement, effective June 30, 2015.

78.     Given the fact that Alhambra had already approved Williams's 'retirement' effective June 30, 2015, and Alhambra's policy of permitting other administrators to execute employment contracts through ESI, Williams proposed change was an immaterial and insignificant aspect of the contract.

79.     On February 19, 2015, a Board meeting was called.  On the agenda were items F.05, "[t]he Board approve Dr. Karen E. Williams contract through [ESI] to serve as Superintendent of the [District] from July 1, 2015 through June 30, 2016," and F.06, "[t]he Board approve a one year contract for Dr. Karen E. Williams to serve as Superintendent of the [District] from July 1, 2015 through June 30, 2016."

80.     During the February 19, 2015 meeting, O'Neil Frantz moved that the Board approve F.05.

81.     The motion failed for lack of a second.

82.     Immediately thereafter, O'Neil Frantz moved that the Board approve F.06.

83.     The motion failed for lack of a second.

84.     Despite Alhambra's offer, and Williams's acceptance of that offer, the Board reneged on the contract by refusing to provide Williams with the renewal regardless of the inclusion or omission of the ESI classification.

85.     On February 25, 2015, another Board meeting was called to order.  The February 25, 2015 agenda identified item D.02, "Select Superintendent Search Firm."  At the February 25, 2015 Board meeting, several public comments were made in connection with the Board reneging or otherwise breaching its contract with Williams.

86.     Public commenters further voiced their concerns with respect to Board actions concerning Williams that were believed to be motived by discriminatory and retaliatory factors.

87.     The Board convened into executive session ostensibly to receive "legal advice" from the District's counsel.  Upon returning from executive session, Lopez Falk moved and Martinez seconded that "the Board direct the Board's attorney to act in accordance  with instructions given in Executive Session," and said motion passed three to one.    With respect to item D.02, the Board voted unanimously to table item D.02 as "the Board [had] just received the quotes and that they needed time to review the quotes before making a decision."

88.     On March 2, 2015, the Board reconvened in a special session.  During that meeting, Williams gave an impassioned speech in which she questioned the Board's decision to renege and breach her employment contract and reiterated her desire to remain as Alhambra's superintendent.  Williams further stated that her employment as the superintendent would actually result in a cost savings for Alhambra.  Nevertheless, Zamora dismissed Williams's comments as "ridiculous" and "out of line."  Immediately thereafter, Zamora moved, and Alvarado seconded, that the Board select Arizona School Boards  Association  ("**ASBA**")  as  the  firm  to  conduct  the  search  for  the  next superintendent.

89.     The motion passed three to one, with one abstention (Martinez was the third vote).

90.     At the conclusion of the March 2, 2015 meeting Zamora stated, "now that they have discussed and voted on the search, this is [sic] point that parents and [sic]

community wanted to be."

91.    Subsequently, on March 26, 2015, the Board convened another special session.  The public agenda for the March 26, 2015 meeting set forth several items for board consideration including, C.01—Designation of individual to sign agreement with the ASBA, C.04—Discussion and consideration of the advertisement for the position of superintendent, C.06—The employment of Williams during the remaining three (3) months of her 2012 contract, and C.07—Leadership pending the appointment and hiring of a superintendent.

92.    Pursuant to C.01, Zamora was designated to sign the agreement with ASBA by a vote of four to one.  As to C.04 and C.05, the Board unanimously approved the ASBA's advertisement statement and approved the inclusion of specific questions to be inquired of each applicant. Prior to discussing agenda items C.05 and C.06, the Board convened in executive session for the purpose of "obtaining legal counsel" for nearly an hour.  Upon the Board's return from executive session, the Board voted three to one, with one abstention, to table C.06.

93.    Martinez thereafter moved, and Alvarado seconded, that the Board place Williams on non-disciplinary paid leave effective immediately.  The motion passed three to two, with Lopez-Falk and O'Neil Frantz voting nay.

94.    The Board then appointed Michael Rivera as the interim superintendent by a vote of three to one, with one abstention.

95.    Thereafter, the Board was afforded an opportunity to make comments regarding its action of effectively terminating Williams for no legitimate reason.

96.    O'Neil Frantz took the opportunity to question why the Board was moving

ZOLDAN LAW GROUP, PLLC
8100 E. Indian School Rd. Suite 103 Scottsdale, Arizona 85251
Tel & Fax: 480.442.3410 – mzoldan@zoldangroup.com

forward with a search when everything that she had seen to date was positive and an employment contract had already been offered by the Board and accepted by Williams.

97.    O'Neil Frantz reiterated that she disagreed with the search being authorized and stated that she does not discriminate nor does she support the discriminatory actions of the Board.

98.    During the public comment portion of the March 26, 2015 meeting, Williams again gave an impassioned speech to the Board where she reiterated her desire to remain the superintendent of Alhambra.

99.    Williams, yet again, specifically complained that she believed she was being discriminated against and that the search process should be stopped in its tracks.

100.    After Williams had concluded speaking, and as had become customary since the Board meeting held on February 19, 2015, a multitude of community members voiced their displeasure with the Board and Alhambra with respect to their discriminatory treatment of Williams.

101.    On April 3, 2015, and without any communication from the Board, Alhambra, or Alhambra's attorney prior thereto, Williams received a letter from Alhambra's attorney which stated that the Board had voted not to renew her contract on April 2, 2015.  However, the April 2, 2015 public agenda and accompanying Board minutes are devoid of any consideration of personnel matters or any matters relating to Williams.

102.    On April 28, 2015, the Board held a special session.  The Board, members of the ASBA, and the Selection Input Committee Members met to discuss the results of a survey and to get individual input from the Selection Input Committee Members

ZOLDAN LAW GROUP, PLLC
8100 E. Indian School Rd. Suite 103 Scottsdale, Arizona 85251
Tel & Fax: 480.442.3410 – mzoldan@zoldangroup.com

regarding the qualities they wanted in a new superintendent. The Selection Input Committee was comprised of six members, Mandi Bilyou, Lisa Elliott, Scott Heusman, Jonathon Larkin, Armando Lopez, and Maria Luica Maldonado.

103. Upon information and belief, the Selection Input Committee Members were not voted on nor approved by the Board. Rather, Zamora and Rivera, as acting superintendent, hand selected the individuals to sit on the Selection Input Committee.

104. After returning from executive session on April 28, 2015, the Board voted four to one in favor of conducting interviews with Dr. Jim Bogner, Dr. Charles Imes, Dr. Michael Robert, Dr. Jeff Sprout, and Mr. Mark Yslas, to replace Williams as superintendent.

105. On May 14, 2015, the Board voted three to zero, with one abstention, in favor of conducting second interviews with Mr. Mark Yslas and Dr. Michael Robert for Williams's replacement.

106. On June 4, 2015, the Board voted three to two to offer a contract to Mr. Mark Yslas to become the next superintendent of Alhambra.

107. Yslas, a Latino/Hispanic male, accepted the contract and is the current Alhambra superintendent.

108. Yslas is less qualified than Williams for the Alhambra superintendent position.

109. With the help of newly appointed Board member, Defendant Ray Martinez (who took office January 1, 2015), Zamora and Alvarado were finally able to secure a majority of Board votes required to complete the discriminatory plan of removing Williams in favor of a Latino/Hispanic candidate.

110.   Prior to Martinez taking office, Zamora and Alvarado did not have the required votes to oust Williams for illegitimate reasons.  However, after Martinez took office, he, Zamora, and Alvarado were able to overpower the two remaining Board members (Lopez Falk and O'Neil Frantz) to carry out their plan to eliminate Williams's employment.

111.   Upon information and belief, Zamora, Alvarado, and Martinez all receive financial support from ADEA.

112.   In addition to Zamora's comments that Williams should be removed because her skin color and national origin does not reflect the community (and his), Martinez has also made similar public comments to that effect.

113.   At an Alhambra sponsored community luncheon, Martinez stated to the public at large that he believed that he and the Board should do more to ensure that Alhambra was staffed by Latino/Hispanic employees.

114.   Martinez further stated that because "Mexicanos" were the dominant ethnic group in the area, Alhambra should focus its efforts to cater to this demographic.  As Martinez made such statements, he looked at Alvarado who was also present during the luncheon, and the two smiled in agreement.

115.   Upon information and belief, Martinez only sought office as a Board member for one term and was funded and supported by ADEA, Zamora, and Alvarado to sway the Board's voting against Williams.

116.   After Alhambra reneged and breached its contract with Williams and terminated her employment, Board member Lopez Falk and Williams had a meeting to discuss her termination.   Lopez Falk stated to Williams that her removal was a

ZOLDAN LAW GROUP, PLLC
8100 E. Indian School Rd. Suite 103 Scottsdale, Arizona 85251
Tel & Fax: 480.442.3410 – mzoldan@zoldangroup.com

ZOLDAN LAW GROUP, PLLC

8100 E. Indian School Rd. Suite 103 Scottsdale, Arizona 85251
Tel & Fax: 480.442.3410 – mzoldan@zoldangroup.com

"witchunt" led by Zamora.  Lopez Falk further stated that he attempted to urge Zamora, Alvarado, and Martinez to change their minds about removing her as superintendent, to no avail.  Lopez Falk apologized to Williams for the conduct of the other Defendant Board members and indicated that he was embarrassed by what was happening to Williams.

117.   Also after Alhambra reneged and breached its contract with Williams and terminated her employment, former Board member Foltz expressed her disagreement with the new "ignorant" Board members' discriminatory and retaliatory conduct.   Foltz further stated that Zamora was a racist and that with her and Sanchez no longer being on the Board, he was able to enact his discriminatory and retaliatory plan on behalf of the Board and Alhambra.

118.   Alhambra, through its Board members Zamora, Martinez, and Alvarado, facilitated Williams's removal based on discriminatory factors.

119.   Alhambra subjected Williams to adverse employment actions because of her race and national origin, namely based on the misperception that an African-American woman does not reflect the demographics of the community and therefore could not effectively lead the school district.

120.   Alhambra subjected Williams to adverse employment actions because of her continued complaints of discrimination, harassment, hostile work environment, and refusal to engage in discriminatory hiring practices.  Williams was vocal in her refusal to advance the Board's discriminatory intent and was terminated as a result of those complaints.

121.   Despite her diligent efforts, Williams has been unable to secure comparable

employment since Alhambra unlawfully severed her employment.

## COUNT I
## RACE DISCRIMINATION IN VIOLATION OF TITLE VII

122.   Plaintiff reasserts and realleges each and every paragraph, *supra*, as if restated herein.

123.   Title VII prohibits discrimination on the basis of race.  Title VII makes it unlawful for an employer to hire or discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions or privileges of employment, because of an individual's race, color, religion, sex or national origin. This covers hiring, firing, promotions and all workplace conduct.

124.   Plaintiff belongs to a protected class in that she is an African-American woman.

125.   Plaintiff was qualified, if not-over qualified, for her superintendent position at Alhambra.

126.   Plaintiff was subjected to an adverse term of employment including termination.

127.   Other employees outside of Plaintiff's protected class were treated more favorably.

128.   As a result, Plaintiff was harmed in an amount to be proven at trial.

## COUNT II
## NATIONAL ORIGIN/COLOR DISCRIMINATION IN VIOLATION OF TITLE VII

129.   Plaintiff reasserts and realleges each and every paragraph, *supra*, as if restated herein.

130.   A prima facie case of national origin/color discrimination in violation of

ZOLDAN LAW GROUP, PLLC

8100 E. Indian School Rd. Suite 103 Scottsdale, Arizona 85251
Tel & Fax: 480.442.3410 – mzoldan@zoldangroup.com

Title VII may be established by proof of the following: (1) Plaintiff belongs to a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably.

131.    Plaintiff belongs to a protected class in that she is an African-American woman.

132.    Plaintiff was qualified, if not-over qualified, for her superintendent position at Alhambra.

133.    Plaintiff was subjected to an adverse term of employment including termination.

134.    Other employees outside of Plaintiff's protected class were treated more favorably.

135.    As a result, Plaintiff was harmed in an amount to be proven at trial.

## COUNT III
## RETALIATION IN VIOLATION OF TITLE VII

136.    Plaintiff reasserts and realleges each and every paragraph, *supra*, as if restated herein.

137.    It shall be an unlawful employment practice for an employer to discriminate against an employee . . . because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

138.    Plaintiff made numerous complaints to Alhambra and the Board opposing discrimination against herself and others in the workplace.

ZOLDAN LAW GROUP, PLLC

8100 E. Indian School Rd. Suite 103 Scottsdale, Arizona 85251
Tel & Fax: 480.442.3410 – mzoldan@zoldangroup.com

139.   In response to her complaints, Plaintiff was subjected to adverse employment actions including, *inter alia*, termination.

140.   As a result, Plaintiff was harmed in an amount to be proven at trial.

**COUNT IV**
**VIOLATION OF 42 U.S.C. § 1983**

141.   Plaintiff reasserts and realleges each and every paragraph, *supra*, as if restated herein.

142.   The Board, and defendants Zamora, Martinez, and Alvarado, in their individual capacities, are "persons" subject to liability for violations of 42 U.S.C. §1983.

143.   A school board is a "person" who may be held liable under section 1983.

144.   Williams is, and at all times relevant hereto was, a United States citizen.

145.   Defendants deprived Williams of a right, privilege, or immunity secured by the Constitution including those rights, privileges, and immunities conferred by the 14th Amendment and 1st Amendment by, *inter alia*:

    i.    Holding executive sessions in which Williams and her employment status were discussed in violation of the District's policies;

    ii.    Intentionally discriminating against Williams on the basis of her being a member of a protected class;

    iii.    Intentionally discriminating against Williams in retaliation for publicly voicing her opinions regarding matters of public concern;

    iv.    Terminating Williams' employment despite the existence of a valid and binding employment agreement; and

146.   The Supreme Court of the United States has held that a person acts under the color of state law when exercising power possessed by virtue of state law and made

ZOLDAN LAW GROUP, PLLC

8100 E. Indian School Rd. Suite 103 Scottsdale, Arizona 85251
Tel & Fax: 480.442.3410 – mzoldan@zoldangroup.com

possible only because the wrongdoer is clothed with the authority of state law.

147.   Defendants were acting within their authority to regulate the affairs of the District, a power conferred upon the Board by the State Legislature, when the Defendants deprived Williams of the aforementioned rights, privileges, and immunities secured by the Constitution.

148.   As stated *supra*, Defendants took wrongful action affecting the employment of Plaintiff in violation of her property rights under the terms and conditions of her employment contract including the policies of Alhambra, and in violation of the Constitution and liberty interest rights as a public employee, and her race, African-American.

149.   These acts were conducted in violation of 42 U.S.C. § 1983.

150.   As a result of Defendants' actions, Plaintiff has suffered significant economic and emotional harm in an amount to be proven at trial, including attorneys' fees and court costs.

## COUNT V
## VIOLATION OF 42 U.S.C. § 1981

151.   Plaintiff reasserts and realleges each and every paragraph, *supra*, as if restated herein.

152.   42 U.S.C. § 1981 prohibits race discrimination in the making and enforcing of contracts, which includes, but is not limited to, employment relationships.

153.   Plaintiff was subjected to intentional discrimination because of her race, African American.  This discrimination began at the outset of her employment and was permeated by Defendants until her unlawful termination.

154.   As   outlined   above,   Defendants   Zamora,   Alvarado,   and   Martinez

ZOLDAN LAW GROUP, PLLC
8100 E. Indian School Rd. Suite 103 Scottsdale, Arizona 85251
Tel & Fax: 480.442.3410 – mzoldan@zoldangroup.com

intentionally made discriminatory comments with respect to Plaintiff's race and her continued employment as the District's superintendent.

155.   Defendants Zamora, Alvarado, and Martinez's racial remarks about Plaintiff, coupled with their overt act in conspiring together to breach Plaintiff's contract and wrongfully terminate her employment with the District, amounts to intentional discrimination in violation of 42 U.S.C. § 1981.

156.   As a result, Plaintiff was harmed in an amount to be proven at trial, including her attorneys' fees and costs.

## COUNT VI
## BREACH OF CONTRACT

157.   Plaintiff reasserts and realleges each and every paragraph, *supra*, as if restated herein.

158.   Defendants provided Plaintiff with a written contract with a fixed term of employment.

159.   The contract expressly restricted the rights of both Williams and Defendants and expressly restricted the rights of both she and Defendants to terminate the employment relationship.

160.   Additionally, the contract was explicitly and materially agreed upon by both Williams and Defendants, thereby demonstrating their mutual and express intent for it to be an employment contract.

161.   The written contract offered by Defendants, and accepted by Williams, was supported by consideration in exchange for one year of employment.

162.   As demonstrated in this Verified Complaint: (a) Defendants promised a fixed term of employment in which Plaintiff would only be discharged only for just cause

ZOLDAN LAW GROUP, PLLC
8100 E. Indian School Rd. Suite 103 Scottsdale, Arizona 85251
Tel & Fax: 480.442.3410 – mzoldan@zoldangroup.com

or in accordance with specified procedures; (b) Defendants' promise was communicated to Plaintiff; (c) Plaintiff accepted the offer; (d) Defendants' promise was supported by consideration; (e) Plaintiff was discharged from employment; and (f) Plaintiff's discharge was contrary to the terms of the contact.

163.    As a result of Defendants' breach, Williams has suffered principal damages in an amount to be proven at trial, including her attorneys' fees and costs.

**COUNT VII**
**WRONGFUL TERMINATION – A.R.S. § 23-1501**

164.    Plaintiff reasserts and realleges each and every paragraph, *supra*, as if restated herein.

165.    An employee has a wrongful termination claim under the AEPA when an employer terminates the employment relationship in violation of "a statute of this state" or "the public policy set forth in or arising out of the statute."

166.    Likewise, under the AEPA, wrongful termination occurs when the employer terminates an employee in retaliation for refusing to violate Arizona law or for reporting violations of Arizona law to the employer's management or other investigative authority. A.R.S. § 23–1501(3)(c)(i), (ii).

167.    At all relevant times, Plaintiff was an employee under A.R.S. § 23-1501.

168.    At all relevant times, Defendants were her employer under A.R.S. § 23-1501.

169.    Plaintiff made numerous complaints with respect to Defendants' discriminatory hiring practices, her own hostile work environment, Open Meeting Law violations, conflicts of interest violations, and retaliation as a result of her refusal to

ZOLDAN LAW GROUP, PLLC
8100 E. Indian School Rd. Suite 103 Scottsdale, Arizona 85251
Tel & Fax: 480.442.3410 – mzoldan@zoldangroup.com

recognize ADEA as the District union.

170.   Plaintiff reasonably believed that Defendants were violating Arizona law.

171.   Plaintiff disclosed those violations of law to Defendants in a reasonable manner on multiple occasions.

172.   Plaintiff disclosed these violations of law to individuals in managerial or supervisory positions that had the authority to investigate or take action to prevent further violations.

173.   Plaintiff was terminated in retaliation for her complaints, made in a reasonable manner, upon her reasonable belief, that Defendants and the Board were violating the laws, statutes, and the Constitution of the State of Arizona.

174.   As a result, Williams has suffered principal damages in an amount to be proven at trial, including her attorneys' fees and costs.

## COUNT VIII
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

175.   Plaintiff reasserts and realleges each and every paragraph, *supra*, as if restated herein.

176.   Plaintiff's employment with Defendants, including the contracts of employment she entered into, included an implied duty of good faith and fair dealing.

177.   Such implied terms are as much part of a contract as are the express terms. The implied covenant of good faith and fair dealing prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement.

178.   Defendants breached their duty of good faith and fair dealing by breaching Plaintiff's valid employment contract by discriminating, retaliating, and ultimately

ZOLDAN LAW GROUP, PLLC
8100 E. Indian School Rd. Suite 103 Scottsdale, Arizona 85251
Tel & Fax: 480.442.3410 – mzoldan@zoldangroup.com

terminating Plaintiff's employment.

179.   Defendants' actions were done with malice or reckless disregard for Plaintiff's rights.

180.   As a result, Williams has suffered principal damages in an amount to be proven at trial, including her attorneys' fees and costs.

## COUNT IX
## VIOLATION OF ARIZONA OPEN MEETING LAW

181.   Plaintiff reasserts and realleges each and every paragraph, *supra*, as if restated herein.

182.   It is the public policy of this state that meetings of public bodies be conducted openly and that notices and agendas be provided for such meetings which contain such information as is reasonably necessary to inform the public of the matters to be discussed or decided.   Toward this end, any person or entity charged with the interpretation of this article shall construe any provision of this article in favor of open and public meetings. A.R.S. §38- 431.09.

183.   "Public Body" means "the legislature, all boards and commissions of this state or political subdivisions, all multi-member governing bodies of departments, agencies, institutions and instrumentalities of the state or political subdivisions, including   without limitation all corporations and other instrumentalities whose boards of directors are appointed or elected by the state or political subdivision. Public body includes all quasi-judicial bodies and all standing,  special  or  advisory committees or subcommittees of,  or  appointed  by,  such  public body." A.R.S. §38-431(6).

184.   A "meeting" is defined as "the gathering, in person or through technological devices, of a  quorum  of members  of  a  public  body  at  which  they

ZOLDAN LAW GROUP, PLLC
8100 E. Indian School Rd. Suite 103 Scottsdale, Arizona 85251
Tel & Fax: 480.442.3410 – mzoldan@zoldangroup.com

discuss, propose or take legal action, including any deliberations by a quorum with respect to such action". A.R.S. § 38-431(4). "It does not matter what label is placed on a gathering, discussion of the public body's business may take place only in a public meeting or an executive session in accordance with the requirements of the Open Meeting Law." A.R.S. § 38 - 431.01(A). "Public officials should refrain from any activities that may undermine public confidence in the public decision making process  established in the Open Meeting Law, including actions that may appear to remove discussions and decisions from public view." Atty. Gen. Op. 7508.

185.   As stated *supra*, Board members have violated Arizona's Open Meeting Laws, specifically with respect to the Plaintiff.  Items and topics concerning the Plaintiff which were not subject to discussion in executive session (i.e. pursuant to A.R.S. § 38-431.03) were in fact discussed in executive session.

186.   Further, as stated *supra*, Zamora and two other Defendant Board members held private, illegal meetings, in violation of Arizona's Open Meeting Laws (Zamora and two additional board members establishes a quorum).

187.   As a result of the violations herein, Plaintiff seeks damages in an amount to be determined at trial, including attorneys' fees and costs.

188.   Plaintiff also seeks injunctive relief to obtain the executive session minutes which were taken in violation of the Arizona Open Meetings Law.

## CONCLUSION AND PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court order such relief as is necessary to make her whole, including, without limitation:

A.   Declaring the acts and practices complained of herein are in violation of

Title VII, 42 U.S.C. § 1981, 42 U.S.C. § 1983, A.R.S. § 23-1501, Arizona Law, and the Arizona Open Meetings Law;

> B.    Compensatory and Special damages to be proven at the time of trial;

> C.    Punitive damages pursuant to Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1983;

> D.    Prejudgment and post-judgment interest;

> E.    Attorneys' fees;

> F.    Costs of suit; and

> G.    For such other relief this Court deems just.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

RESPECTFULLY SUBMITTED February 17, 2016.

**ZOLDAN LAW GROUP, PLLC**

By: /s/ Michael Zoldan
    8100 E. Indian School Road
    Suite 103
    Scottsdale, AZ 85251
    Attorneys for Karen Williams

**COOK & PRICE, PLC**

By: /s/ Zachary Price
    60 E. Rio Salado Road
    Suite 900
    Tempe, AZ 85281
    Attorneys for Karen Williams

1

## **VERIFICATION**

2

3       Plaintiff Karen Williams declares under penalty of perjury that she has read the

4  foregoing Verified Complaint and is familiar with the contents thereof.   The matters

5  asserted therein are true and based on her personal knowledge, except as to those matters

6  stated upon information and belief, and as to those matters, she believes them to be true.

7

8

9                                    *Karen E. Williams*

10                                   Karen Williams

ZOLDAN LAW GROUP, PLLC
8100 E. Indian School Rd. Suite 103 Scottsdale, Arizona 85251
Tel & Fax: 480.442.3410 – mzoldan@zoldangroup.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28