**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Karen Williams,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>Alhambra School District No. 68, et al.,<br><br>　　　　　　　Defendants. | No. CV-16-00461-PHX-GMS<br><br>**ORDER** |

Pending before the Court is the Motion for Summary Judgment of Defendants Alhambra School District No. 68, Robert Zamora, Ray Martinez, and Mari Alvarado. (Doc. 72). For the following reasons, the Court grants the motion in part and denies the motion in part.

**BACKGROUND**

Plaintiff Karen Williams was employed by the Alhambra Elementary School District No. 68 as Superintendent, with her initial contract running from July 1, 2010 to June 30, 2013. (Doc. 73, Ex. 3). At this time, the Alhambra School Board consisted of Elizabeth Sanchez, Robert Zamora, Mari Alvarado, Paul Enniss, and Adam Lopez Falk. *Id*. Her contract was for $151,000 base pay with yearly increases. *Id*. In 2012, Dr. Williams and the Alhambra School Board negotiated a new contract for the period of July 1, 2012 to June 30, 2015. *Id*. at Ex. 4. Billie Foltz had replaced Mr. Enniss on the Board. *Id*. Under this contract, Dr. Williams's base salary was $185,000. *Id*. A May 2013 addendum increased Dr. Williams's salary for the 2013–2014 year to $191,475; a similar

addendum from May 2014 increased the salary for the 2014–2015 year to $198, 176. *Id.* at Exs. 5, 6. In November of 2014, elections for the Board were held and resulted in two new board members. Ms. Foltz and Ms. Sanchez were replaced by Ray Martinez and Cathleen O'Neil Frantz. With the new members seated, the Board, on January 22, 2015, unanimously authorized an additional one-year contract with an increase of 5% to the performance-based pay. *Id.* at Ex. 13. A contract was drafted, but it was not signed by any of the parties. *Id.* at Ex. 14.

After the Board authorized the contract, the parties continued to discuss specific terms. Dr. Williams sought to be employed through Educational Services Incorporate ("ESI"), a third-party contractor. In this arrangement, Dr. Williams could retire from the District but continue to work in her role as Superintendent. A February 19, 2015 Board meeting contained two contract proposals for Dr. Williams: (1) a one-year contract through ESI, or (2) a traditional one-year contract, the same as the one agreed to at the January 22, 2015 Board meeting. *Id.* at Ex. 17. Ms. O'Neil Frantz moved for the Board to approve the ESI contract, but no Board Member seconded the motion. *Id.* Ms. O'Neil Frantz then moved for the Board to approve the traditional contract, and again, there was no second. *Id.* Both motions failed. On March 26, 2015, Dr. Williams was placed on non-disciplinary paid leave. This vote was supported by Mr. Zamora, Mr. Martinez, and Ms. Alvarado and opposed by Ms. O'Neil Frantz and Mr. Lopez Falk. (Doc. 83, Ex. 19). The Board voted not to renew Dr. Williams's contract on April 2, 2015. (Doc. 73, Ex. 18). The Board selected a firm to conduct a search for a new Superintendent. Mr. Zamora, Mr. Martinez, and Ms. Alvarado voted in favor of selecting a search firm, while Ms. O'Neil Frantz voted against and Mr. Lopez Falk abstained. *Id.* at Ex. 19. The Board offered interviews to four candidates, comprised of two Caucasians, one Hispanic, and one African American. *Id.* at Ex. 10. Two candidates, Mark Yslas, an Hispanic, and Michael Robert, an African-American, were given second interviews. *Id.* at Ex. 21. Mr. Zamora was absent from the May 12, 2015 meeting where the final two candidates were selected. The Board eventually hired Mr. Yslas, whose contract provided for a

$150,000 base salary. Mr. Zamora, Mr. Martinez, and Ms. Alvarado voted in favor of hiring Mr. Yslas, and Ms. O'Neil Frantz and Mr. Lopez Falk voted against the motion. (Doc. 83, Ex. 21).

Dr. Williams, an African-American, filed this suit alleging discrimination on the basis of race. Dr. Williams alleges that Mr. Martinez, Mr. Zamora, and Ms. Alvarado made various statements revealing that they disapproved of Dr. Williams because she was not Hispanic. *Id*. at Exs. 3, 9, 15, 18, 22. The School District serves a predominantly Hispanic population. *Id*. at Ex. 3.

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson,* 477 U.S. at 248). When the nonmoving party "bear[s] the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

### II. Analysis

#### A. Race and National Origin Discrimination

Dr. Williams alleges that her contract was not renewed due to her status as an African American, because the Board sought to have a Hispanic Superintendent to reflect

the population of the area. Dr. Williams bring four counts containing allegations of racial or national origin discrimination: Count I, race discrimination under Title VII; Count II, national origin discrimination under Title VII; Count IV, a 42 U.S.C. § 1983 claim for violations of the Equal Protection Clause of the Fourteenth Amendment; and Count V, a § 1981 claim for racial discrimination in contracting. Defendants seek summary judgment on all four counts, arguing that Plaintiff has not established racial discrimination was the cause of her termination.

### 1. Title VII

An employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff must establish a prima facie case of discrimination, offering proof that: (1) "the plaintiff belongs to a class of persons protected by Title VII;" (2) "the plaintiff performed his or her job satisfactorily;" (3) "the plaintiff suffered an adverse employment action;" and (4) "the plaintiff's employer treated the plaintiff differently than a similarly situated employee who does not belong to the same protected class as the plaintiff." *Cornwell v. Electra Central Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Once the plaintiff has established a prima facie case, the defendant must rebut the presumption of discrimination by "articulat[ing] some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802. If the defendant provides such evidence, the *McDonnell Douglas* presumption "simply drops out of the picture" and "the trier of fact proceeds to decide the ultimate question: whether plaintiff has proven 'that the defendant intentionally discriminated against [him]' because of his race." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993) (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). At this point, plaintiffs must "be afforded a fair opportunity to show that the [defendant's] stated reason for [plaintiff's] rejection was in fact pretext." *McDonnell Douglas*, 411 U.S. at 804. A plaintiff may respond to a

summary judgment motion by "using the *McDonnell Douglas* framework, or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated [the defendant]." *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004). But "it is not particularly significant whether [a plaintiff] relies on the *McDonnell Douglas* presumption, or whether he [or she] relies on direct or circumstantial evidence of discriminatory intent;" either way, the plaintiff must produce some evidence suggesting that the defendant's adverse employment action was "due in part or whole to discriminatory intent," and so the plaintiff must counter the defendant's nondiscriminatory explanation. *Id.* at 1123.

Dr. Williams is an African American, a protected class under Title VII. Defendants later raise concerns about Dr. Williams's job performance in the context of presenting a nondiscriminatory reason for her rejection. But for the purposes of establishing a prima facie case, defendants do not contest that Dr. Williams was qualified for the role of Superintendent and had received good reviews for many years. Defendants also do not dispute, for the purposes of this motion, that the nonrenewal of Dr. Williams's contract was an adverse employment action. But, Defendants do contest the fourth element of a prima facie case: that the plaintiff's employer treated the plaintiff differently than a similarly situated employee who does not belong to the same protected class as the plaintiff. Defendants note that the Board chose a Hispanic and an African American as the two finalists to replace Dr. Williams. In gender discrimination cases, the Ninth Circuit has permitted plaintiffs to satisfy the fourth element by showing that the employee who replaced the plaintiff lacked the characteristics that led to the discrimination. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002). Dr. Williams was replaced by a Hispanic individual, Mr. Yslas. Dr. Williams has alleged that the Board discriminated against her because she was not Hispanic. Her replacement by a Hispanic individual satisfies the fourth element, and Dr. Williams has established a prima facie case.

///

The burden now shifts to the employer to demonstrate legitimate, nondiscriminatory reasons for the nonrenewal of the contract. Defendants identify the following: (1) Dr. Williams's excessive compensation; (2) declining student achievement; (3) declining enrollment; and (4) high employee turnover and low morale. Defendants provide evidence supporting all of these legitimate reasons, through depositions of board members and documentation of student enrollment and achievement. Dr. Williams was paid more than Superintendents of similar districts were paid. (Doc. 73, Ex. 25). Some schools within the district received lower grades from the state during Dr. Williams's tenure. *Id*. at Ex. 28. The district served fewer students than at the start of Dr. Williams's employment. *Id*. at Ex. 2. Board members testified that they were concerned about employee morale and there is evidence that teacher turnover was high during Dr. Williams's employment. *Id*. at Ex. 35. The burden on Defendants is only "one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves*, 530 U.S. at 142 (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993)). These reasons constitute legitimate, nondiscriminatory reasons to terminate Dr. Williams's contract; Defendant has met its burden of production.

A plaintiff may demonstrate pretext in two ways: "(1) directly, by showing that unlawful discrimination more likely than not motivated the employer; or (2) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112–13 (9th Cir. 2011).

Plaintiff asserts that comments were made by multiple Board members that evidence a preference for Hispanics. At a luncheon in late January/ early February 2015, just prior to Dr. Williams's non-renewal, Mr. Martinez allegedly discussed the need for the District to assist its large Hispanic population and to hire more Hispanics. (Doc. 83, Ex. 18, SOF 44). Ms. Sanchez allegedly told Dr. Williams in July 2013 that Mr. Zamora and Ms. Alvarado had made comments about wanting to end Dr. Williams's career at

Alhambra because she was not Hispanic.[1] *Id.* In December 2013, Mr. Zamora in evaluating Dr. Williams, expressed the need for her to hire more Hispanics at the district administrative level and at school locations, to which Dr. Williams replied that the best qualified employees would be hired regardless of race. (Doc. 89, Ex. 9, SOF 42, 43). Dr. Williams asserts that Mr. Zamora angrily told her, very soon after she was hired, that he believed that the superintendent should reflect the demographics of the school district's community. *Id.* at Ex. 22. Defendant dismisses these statements as inadmissible hearsay. But calling something hearsay, without more, does not make it so. Statements which are offered against an opposing party and were made by the opposing party, its agent, or its employee are not hearsay. Fed. R. Evid. 801(d)(2). Mr. Martinez and Mr. Zamora are both individually named Defendants, and thus party opponents. They were also both members of the Defendant school board, when the respective comments were made (Mr. Martinez in early 2015 and Mr. Zamora in 2010 and 2013). Ms. Sanchez is not an individually named defendant, but she was a member of the Defendant school board when she spoke with Ms. Williams in July 2013.[2] Defendant presents no argument that these statements allegedly made by various board members are not the statements of a party opponent. Generally, "very little [ ] evidence is necessary to raise a genuine issue of fact regarding an employer's motive; any indication of discriminatory motive . . . may suffice to raise a question that can only be resolved by a fact-finder." *McGinest*, 360 F.3d at 1124 (quoting *Schnidrig v. Columbia Machine, Inc.*, 80 F.3d 1406, 1409 (9th Cir. 1996)). The statements, viewed in the light most favorable to the non-moving party,

---

[1] Defendants assert in the Reply Brief that Defendant Alvarado should be granted summary judgment on Plaintiff's § 1981 and § 1983 claims for a lack of supporting evidence. This argument is raised for the first time in the Reply Brief, so the Court will not consider it. Plaintiff has not had a fair opportunity to respond. Moreover, Dr. Williams testified that she was told by Ms. Sanchez, a member of the Board and thus an agent of the Defendant School District, that Ms. Alvarado made discriminatory comments.

[2] To the extent there is a double hearsay issue with regards to Ms. Sanchez's comments to Ms. Williams about statements made by Mr. Zamora and Ms. Alvarado, Mr. Zamora and Ms. Alvarado were also members of the Board at the time Ms. Sanchez spoke to Ms. Williams.

demonstrate that members of the Board were cognizant of and discussing the race of Dr. Williams compared to the race of other members of the community. It is for a jury to decide whether these statements demonstrate discrimination.

Dr. Williams also argues that the Board's reasons for her termination are pretextual.[3] The previous superintendent was permitted to be hired through ESI. *Id.* at Ex. 3. There is also the fact that immediately after two new members were elected to the Board in November 2014, the Board unanimously authorized a contract for Dr. Williams on January 22, 2015 but rejected the contract on February 19, 2015. In the interim, there were no changes or new information to the District's finances, student achievement, or student enrollment. *Id.* at Ex. 16. But, in combination with the alleged statements of Board member Martinez at the proximate time, where the direct and circumstantial evidence "consists of more than the *McDonnell Douglas* presumption, a factual question will almost always exist with respect to any claim of a nondiscriminatory reason." *McGinest*, 360 F.3d at 1124 (quoting *Sischo-Nownejad v. Merced Community College District*, 934 F.2d 1104, 1111 (9th Cir. 1991) (abrogated on other grounds)). The jury must decide whether the District and the Board members acted with an intent to discriminate.

### 2. Section 1983

In Count IV, Dr. Williams brings a § 1983 claim alleging a violation of the Fourteenth Amendment by Defendants' intentional discrimination against Dr. Williams on the basis of her race. In such a claim, the plaintiff must prove that the defendant "acted in a discriminatory manner and that the discrimination was intentional." *FDIC v. Henderson*, 940 F.2d 465, 471 (9th Cir. 1991). A plaintiff may prove discriminatory intent with either direct or indirect evidence. *Id.* Unlike a Title VII claim, "there is no specific test than an equal protection plaintiff is required to meet, and in order to survive

---

[3] Dr. Williams also argues that Defendants have abused attorney-client privilege, by claiming that the entirety of certain executive sessions were privileged. If Plaintiff had concerns about Defendants' assertion of privilege, Plaintiff should have raised a discovery dispute with the Court.

a motion for summary judgment by the defendant, a plaintiff must only produce sufficient evidence to establish a genuine issue of fact as to the defendant's motivations." *Id*. The "status of the § 1983 claim generally depends on the outcome of the Title VII analysis," and this Court determined, in the Title VII analysis above, that Plaintiff has raised a question of fact as to the Defendants' motivations. *Id*. at 472 n. 14; *Lowe v. City of Monrovia*, 775 F.2d 998, 1010–11 (9th Cir. 1985).

### 3. Section 1981

Count V alleges that Defendants engaged in racial discrimination while making and enforcing contracts, in violation of § 1981. Section 1981 claims are analyzed using "the same legal principles as those applicable in a Title VII disparate treatment case." *Metoyer v. Chassman*, 504 F.3d 919, 930 (9th Cir. 2007) (quoting *Fonseca v. Sysco Food Services of Arizona, Inc.*, 374 F.3d 840, 850 (9th Cir. 2004)). Therefore, as the Court has noted, the Plaintiff has raised sufficient questions of fact for the jury to resolve.

## B. Retaliation

In Count III, Dr. Williams alleges that her termination and nonrenewal of the contract was retaliation for her actions protesting discriminatory actions of Board members. Title VII prohibits employers from discrimination against an employee who has "opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). A prima facie case of relation requires showing: (1) that the employee engaged in a protected activity; (2) that the employer subjected the employee to an adverse employment action; and (3) that a causal link exists between the protected activity and the adverse action. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). If a prima facie case is made out, the defendant must articulate a legitimate, nondiscriminatory reason for its decision; then, the plaintiff bears the burden of showing the reason is pretext for discrimination. *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464–65 (9th Cir. 1994).

Plaintiff claims that she engaged in three protected activities. First, on December 5, 2013, she sent a letter to the Board emphasizing that the District will not take race into

account when making hiring decisions. The letter states that it is sent in response to an email from Mr. Zamora and findings of her 2013 performance evaluation. (Doc. 83, Ex. 30). In that evaluation, Mr. Zamora had indicated that he did not feel the District was taking sufficient steps to ensure the employees reflected the demographics of the community. Second, Dr. Williams had a phone conversation with the District's attorney on April 11, 2014. In the conversation, Dr. Williams expressed concern that Mr. Zamora intended to end her employment because she was not a Latina and she was opposed to his union activities. *Id*. Finally, on March 2, 2015, Dr. Williams spoke at a Board meeting, expressing concern about the Board's racially motivated decision and goal of obtaining a Hispanic administration. *Id*. It is unlawful for an employer to "fail or refuse to hire . . . any individual . . . because of such individual's race, color, . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). By opposing the alleged unlawful employment practices of the Board, namely their racial discrimination in hiring, Dr. Williams engaged in a protected activity.

Dr. Williams must also establish that her engagement in protected activities resulted in adverse employment actions. Dr. Williams alleges that Mr. Zamora gave her negative comments on her 2014 performance review, after her December 2013 letter and April 2014 conversation with the District attorney. Dr. Williams was placed on nondisciplinary paid leave on March 26, 2015, shortly after her speech at the Board meeting. Defendants argue that the December 2013 letter was too far removed temporally from Dr. Williams's placement on paid leave to show causation. Defendants also argue that placement on nondisciplinary paid leave is not an adverse action. The Ninth Circuit "take[s] an expansive view of the type of actions that can be considered adverse employment actions." *Ray*, 217 F.3d at 1241. Therefore, "an action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity." *Id*. at 1243. Actions that "turn[ ] out to be inconsequential g[o] to the issue of damages, not liability." *Hashimoto v. Dalton*, 118 F.3d 671, 676 (9th Cir. 1997). Causation "may be inferred from circumstantial evidence, such as the employer's

knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987). Viewing the facts in the light most favorable to the nonmoving party, Dr. Williams, a jury could find that negative performance reviews and placement on paid leave would deter an employee from engaging in protected activity. Similarly, a jury could find causation due to the proximity in time particularly with regard to the March 2015 speech. Even assuming that the 2013 and 2014 incidents were too remote to establish causation, considered in conjunction with Dr. Williams' statements at the board meeting in 2015, they are sufficient to create an issue of fact. It is the jury's role to determine credibility and weigh the facts to decide whether the Board acted with a retaliatory intent.

### C. Breach of Contract

Three of Plaintiff's claims involve a contractual component: breach of contract in Count VI, breach of covenant of good faith and fair dealing in Count VIII, and the deprivation of Fourteenth Amendment rights by terminating a valid employment agreement in Count IV.

A plaintiff must show that an enforceable contract exists, that it was breached, and that the plaintiff suffered damages to sustain a breach of contract claim. *Graham v. Asbury*, 540 P.2d 656, 657 (Ariz. 1975). An enforceable contract requires an offer, acceptance, consideration, and sufficiently specific terms. *Rogus v. Lords*, 804 P.2d 133, 135 (Ariz. Ct. App. 1991). An "attempt to accept on terms materially different from the original offer constitutes a counter-offer, which rejects the offer." *Clark v. Compania Ganadera de Cananea, S.A.*, 385 P.2d 691, 697 (1963). Plaintiff argues that the January 22, 2015 Board meeting resulted in an enforceable contract between Plaintiff and the District for the 2015–2016 year. The Board members unanimously voted to authorize a one-year contract for the upcoming year. Dr. Williams asserts that she accepted the contract in an executive session of the Board meeting. (Doc. 83, Ex. 22, p. 130) ("I had accepted the offer of the one-year contract."). At least two Board members, Mr. Lopez

Falk and Ms. O'Neil Frantz, testified that they believed Dr. Williams accepted the contract offer. *Id*. at Ex. 5, p. 80; Ex. 1, p. 63, 72–73. The District's attorney emailed Dr. Williams's attorney a written contract on January 23, 2015. *Id*. at Ex. 31.Upon receiving the contract, Dr. Williams's attorney discussed with the District's attorney about the possibility of hiring Dr. Williams through ESI. The District claims that these further negotiations amounted to a counteroffer. *Id*. at Ex. 3. Dr. Williams's attorney disputes this and claims that the District was informed that Dr. Williams would accept the contract regardless of whether she was hired through ESI or not. *Id*. at Ex. 29. Whether a provision providing for being hired through ESI is a materially different term is also disputed. Dr. Williams asserts that employment through ESI is common and, if anything, would lead to cost savings for the District. *Id*. at Ex. 1, pp. 98–99; Ex. 14. The District, however, counters that many Board members view hiring through ESI as double dipping and as sufficiently different terms. (Doc. 73, Exs. 10, 15, 16). Thus, questions of fact exist as to whether an enforceable contract exists. The parties dispute whether Dr. Williams accepted the contract during the executive sessions of the Board meeting on January 22, 2015. The parties further dispute whether the subsequent discussions about ESI constitute a counteroffer, and rejection of the initial offer.

Even if a contract was formed, the District argues that it is unenforceable because no written document was signed. The District argues that this violates the Arizona Employment Protection Act (EPA) and the Statute of Frauds. Dr. Williams argues that the written minutes of the January 22, 2015 Board meeting, signed by the Board president and the Board clerk, qualify as a written document. The Board minutes state: "Mrs. Alvarado moved and Mrs. O'Neil Frantz seconded that the an [sic] additional one year contract will be authorized and has been negotiated for the Superintendent, with an increase of 5% only to the performance based pay. The motion passed unanimously." (Doc. 83, Ex. 12). The Board minutes contain the "specified duration of time" of the employment relationship and the "writing [was] signed by the party to be charged." A.R.S. § 23-1501(2); § 44-101(5). Defendant also argues that legal action may not be

taken in an executive session of a Board meeting; rather, Arizona law requires that public votes be taken before legal action binds the public body. *Id*. at § 38-431.03(D). But Defendant overlooks the fact that the Board voted later the same night to approve the contract. Were a jury to find that there was a contract formed, Defendant provides no explanation as to why the offer, acceptance, and consideration would not also be present at the time of the public Board vote.

If the jury were to find that an enforceable contract was created, then Plaintiff could bring a claim for breach of the implied covenant of good faith and fair dealing. Similarly, Plaintiff could also bring a claim under § 1983 for a Fourteenth Amendment violation stemming from the termination of the contract. The Court denies the motion for summary judgment on Counts VI, VII, and IV.

### D. Wrongful Termination

Count VII alleges that Plaintiff was wrongfully terminated in violation of A.R.S. § 23-1501. An employee has the right to bring a tort for wrongful termination where the employee was terminated after a "disclosure by the employee in a reasonable manner that the employee has information or a reasonable belief that the employer, or an employee of the employer, has violated, is violating or will violate the Constitution of Arizona or the statutes of this state." *Id*. at § 23-1501(3)(c)(ii). The disclosure must be made to "the employer or a representative of the employer who the employee reasonably believes is in a managerial or supervisory position and has the authority to investigate the information provided by the employee." *Id*. Therefore, Plaintiff must establish that: (1) she believed another employee was violating state law; (2) she disclosed this information to her employer; and (3) "she was terminated because of the first two steps." *Revit v. First Advantage Tax Consulting Services, LLC*, No. 10-cv-1653-PHX-DGC, Doc. 123, at *2 (D. Ariz. filed April 12, 2012). Dr. Williams sent a letter to Dr. Doug Virgil, the District's Superintendent for Business Services, disclosing her reasonable belief that Mr. Zamora's union affiliations and activities violated state law. (Doc. 83, Ex. 30, Attachment C). However, Dr. Williams provides no evidence that any Board member

was aware that this disclosure was made, and the letter was addressed only to Dr. Virgil. If Dr. Williams cannot show that the Board, which is in charge of hiring or firing the Superintendent, knew of her disclosure,[4] then Dr. Williams cannot show that she was terminated as a result of her disclosure. Dr. Williams bears the burden of proof on the issue of causation at trial, and has "fail[ed] to make a showing sufficient to establish the existence of an element essential to [her] case." *Celotex*, 477 U.S. at 323. Therefore, the Court grants summary judgment to Defendants on Count VII.

## CONCLUSION

Questions of fact exist as to whether Dr. Williams was subject to discrimination in her employment and whether she was retaliated against for reporting such concerns. Questions of fact also exist as to whether a contract was created for the 2015–2016 school year. These claims must be decided by a jury. Plaintiff's wrongful termination claim under state law, however, fails to make a sufficient showing that would allow a jury to find for the Plaintiff on that claim. The Court grants summary judgment to Defendants only on Count VII.

**IT IS THEREFORE ORDERED** that the Motion for Summary Judgment of Defendants Alhambra School District No. 68, Robert Zamora, Ray Martinez, and Mari Alvarado (Doc. 72) is **granted in part and denied in part**.

Dated this 29th day of June, 2018.

_____
Honorable G. Murray Snow
United States District Judge

---

[4] This is different than the Title VII retaliation claims. There, the Board members were aware of Dr. Williams's charges of racial discrimination.