**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Karen Williams, | No. CV-16-00461-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Alhambra School District No. 68, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff Karen Williams' request for front pay and backpay. For the following reasons, the Court will issue an award of $37,992.06 dollars in backpay.

## BACKGROUND

This action was tried to a jury for three weeks from May 28, through June 4, 2019. Plaintiffs case focused primarily on the Alhambra Elementary School District's decision not to renew Dr. Karen Williams's employment contract as superintendent of the district for a single year. On June 6, the jury returned a verdict for Plaintiff Dr. Karen Williams. The jury found school board member Ray Martinez liable on Plaintiff's claims under 42 U.S.C. § 1983 and § 1981. They additionally found the Alhambra Elementary School District Liable for Plaintiff's retaliation claim under Title VII. (Doc. 214). The jury awarded $198,763 in compensatory damages and awarded $5,000 in punitive damages against Mr. Martinez. *Id.*

/ / /

/ / /

If Dr. Williams had continued working at Alhambra Elementary School District for the single year at issue, she would have received the following amounts in compensation: base salary of 198,176.63, business expense allowance of 7,500, car allowance of 8,400 and tax deferred annuity contribution of 16,500.[1]

During the trial, evidence was presented of Dr. Williams' salary after she left Alhambra. (Doc. 188 at 137). In March of 2015, Dr. Williams was placed on paid leave from Alhambra school district. In April, she was informed that her contract would not be renewed. Her contract ended on June 30, 2015. At trial, Dr. Williams testified that on July 1, 2015, she began a new position that paid 110,000 dollars annually. Her salary was then increased in July 2016 to 113,300 dollars annually. In June of 2017, Dr. Williams voluntarily chose to go part time, accordingly took a reduced salary, did not seek other employment, and then in 2018 she voluntarily retired. She also testified that she has not sought further employment.

When Dr. Williams began at Great Hearts Academy, she also began to receive her Alhambra Early Retirement Benefit of $26,084.[2] On July 1, Plaintiff became eligible to receive her pension benefit, which totals $256,000 annually. Notably, Plaintiff would not have been eligible to receive that benefit had she found employment at another publicly operated school district. Dr. Williams reported a total income of $439,305.00 for 2015, and $351,536.00 for 2016.

On June 25, the Court heard argument from both sides as to whether to award front and back pay against Defendant under Title VII.

**DISCUSSION**

**I.    Legal Standard**

"A plaintiff bears the burden of proving the damages caused her. These damages are determined by 'measuring the difference between actual earnings for the period and those which she would have earned absent the discrimination by defendant." *Gotthardt v. National*

---

[1] The Court will decline to consider buy back for leave and vacation days and performance based awards, because Plaintiffs did not present sufficient evidence to demonstrate how much leave Dr. Williams would have used, and how she would have performed if she was retained at Alhambra Elementary School District.

[2] The parties do not dispute that this amount should be deducted from the backpay award.

*R.R. Passenger Corp.*, 191 F.3d 1148, 1158 (9th Cir. 1999) (internal citations omitted). "Title VII provides courts with considerable equitable discretion to ensure adequate compensation." *Clemens v. Centurylink Inc.*, 874 F.3d 1113, 1115 (9th Cir. 2017); *see also see Lutz v. Glendale Union High Sch.,* 403 F.3d 1061, 1068–69 (9th Cir. 2005) ("[T]here is no right to have a jury determine the appropriate amount of back pay under Title VII . . .. Instead, back pay remains an equitable remedy to be awarded by the district court in its discretion.").

"Front pay is the term used to describe damages paid as [prospective] compensation for training or relocating to another position. An award of front pay is made in lieu of reinstatement when the antagonism between employer and employee is so great that reinstatement is not appropriate." *Caudle v. Bristow Optical Co., Inc*, 224 F.3d 1014, 1020 (9th Cir. 2000).

A finding of discrimination in a Title VII case does not relieve the Plaintiff of her general duty to mitigate the resulting damages. *Sias v. City Demonstration Agency*, 588 F.2d 692, 696 (9th Cir. 1978); *see also Thorne v. City of El Segundo*, 802 F.3d 1131, 1135–1136 (9th Cir. 1986). Defendants have the burden of proving Plaintiff failed to mitigate her damages. *Edwards v. Occidental Chemical Corp.*, 892 F.2d 1442, 1449 (9th Cir. 1990).

**II.     Analysis**

    **1.     No Front Pay Will Be Awarded**

The Court will not make a front pay award because Dr. Williams has failed to establish that she is entitled to such an award. Dr. Williams only worked full time for two years for Great Hearts after leaving Alhambra Elementary School District. Thereafter she worked for a year part time and then fully retired. This does not support her argument that she would have worked for *six* years after her non-renewal at Alhambra Elementary School District. Indeed, Dr. Williams specifically testified that her decision to go part time and then retire was voluntary. Now, she has been fully retired for two years. As the Ninth Circuit explained in *Caudle*, "[Plaintiff] never alleged (and there is no reason to otherwise to believe) that her decision to withdraw from the work force . . . was in any way affected by [Defendant's] discriminatory termination of her employment." 224 F.3d at 1020. Taken together, these facts

demonstrate that a front pay award is unwarranted and that the Court will limit its backpay award to the two years during which Ms. Williams worked full time.

### 2. The Collateral Source Rule Bars an Offset of Plaintiff's Pension Benefit

A federal court applies state law in matters involving the collateral source rule. *In re Air Crash Disaster Near Cerritos, Cal*, 982 F.3d 1271, 1277 (9th Cir. 1992). In Arizona, "[t]he rule permits an injured party to recover . . . expenses from a tortfeasor, notwithstanding reimbursement of such expenses by the injured party from a third party, if such reimbursement is from a 'collateral source' and not from a tortfeasor." *Siverson v. United States*, 710 F.2d 557, 559 (9th Cir. 1983). Here, Plaintiff argues that her damages should not be offset by her pension benefits, because those benefits were paid into by her.

Generally, "pension benefits may be viewed as earned by the claimants and therefore not paid by the employer at all." *E.E.O.C. v. O'Grady*, 857 F.2d 383, 391 (7th Cir. 1988) (emphasis omitted). In this light, "pension benefits [are] part of the claimants' compensation." *Id*. The payments at issue here, as in *O'Grady*, were "made to carry out a state policy under state law independent of. . . back pay awards; they did not discharge any direct obligation from the" Alhambra School District to Dr. Williams under Title VII. *Id.*

Defendant points to *McLean v. Runyon* and argues that it compels this court to offset Dr. Williams's pension benefit. (Doc. 217 at 4) (citing *McLean v. Runyon*, 222 F.3d 1150, 1156 (9th Cir. 2000). But *McLean* only held that where an employer pays entirely for workers compensation for a disability suffered at work, that compensation may be offset against backpay and front pay determinations under other statutes. *Id*. Here, there was no evidence presented about how much of Dr. Williams's pension benefit was derived from payments from the District, payments from Dr. Williams, or from payments by the state of Arizona. Thus, the Court cannot definitively conclude which party here would receive a windfall from consideration of the pension, and is not required by *McLean* to offset the pension from the backpay award. However, instead of offsetting the pension benefits under the collateral source doctrine, the Court will consider all circumstances surrounding Dr. Williams's subsequent employment search in its decision to award backpay. *See E.E.O.C. v. Northwest*

*Airlines Inc.*, 1987 WL 59590 at *11 (W.D. Wa. 1987).

### 3. The Court will award a reduced backpay amount for the 2015-2016 year because Dr. Williams could have further mitigated her damages.

After considering all the evidence and arguments of the parties, the Court will issue a backpay award only for the two-year period from June 2015 until July 2017. The backpay award will consist of the salary that Dr. Williams would have received during those two years from Alhambra School District, less the salary she received at the Great Hearts Academy and her Early Retirement Benefit. The Court will then reduce that amount further given that Dr. Williams testified that she limited her employment search to schools that were not public.

Dr. Williams significantly benefited from the fact that she could immediately start drawing from her pension on July 1, 2015 if she left Alhambra Elementary School District and did not gain employment at another public-school district. This allowed her to increase her overall income when she moved to Great Hearts Academy, despite taking a job that paid significantly less than her prior position at the Alhambra Elementary School District. Dr. Williams testified that she limited her employment search to private schools so that she could receive her salary in addition to her pension benefit. Stephen Highlen from the Arizona School Boards Association testified regarding that association's salary survey results. The ASBA 2015 Survey shows that, the median base pay that a superintendent receives in Arizona is $150,000 in urban districts, and $150,262 in suburban districts. (Ex. 237 at 45). The median base salary for Maricopa County employees is likewise 150,000 dollars annually. (*Id.* at 46). Mr. Highlen also testified that there were several openings at local school superintendent positions after July 1, 2015. (Doc. 198 at 104–106). Given Dr. Williams experience and credentials, she could have likely received a similar benefits package if she was offered a position at one of the public school district openings.

The Court will therefore calculate the damages as follows: it will take Dr. Williams's potential base salary at the Alhambra Elementary School District for the 2015-2016 year and 2016-2017 school year (198,091.65 for each year) and reduce it by the average base salary from within Maricopa County ($150,000 for each year). It will further reduce the amount by

her Early Retirement Benefit ($52,169.96), which the parties do not contest should be offset against the total backpay award, as well as interest from the tax deferred annuity ($8,000). For the reasons discussed above, the Court will decline to award backpay on the basis of Dr. Williams various benefits, her vacation time, or her potential performance raise. As is authorized by Title VII, the Court will award prejudgment interest on the backpay award. *Loeffler v. Frank*, 486 U.S. 549, 557 (1988).[3]

**IT IS THEREFORE ORDERED** that Plaintiff is entitled to a backpay award of $37,992.06 for her claim under Title VII against the Alhambra Elementary School district. This payment amount includes prejudgment interest. The Court will not award front pay for the reasons discussed above.

**IT IS FURTHER ORDERED** directing the Clerk of Court enter judgment accordingly and terminate this action.

Dated this 28th day of June, 2019.

_____
G. Murray Snow
Chief United States District Judge

---

[3] Because this case is brought under federal law, the Court will use the federal rate set by 28 U.S.C. § 1961(a). The prejudgment interest on the backpay award for the 2015-2016 school year is $1,086.54, for the 2016-2017 school year it is $722.22.