**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Karen Williams,<br><br>                        Plaintiff,<br><br>v.<br><br>Alhambra School District No. 68, et al.,<br><br>                        Defendants. | No. CV-16-00461-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Defendants Alhambra School District No. 68, et al. ("Defendants")' Motion for Attorneys' Fees and Non-Taxable Expenses (Doc. 221). Defendants request a reimbursement of fees and costs in the amount of $349,397.20 in attorney fees and $2,007.10 in non-taxable expenses. Also pending before the Court is Plaintiff Karen Williams ("Plaintiff")'s Motion for Attorneys' Fees and Related Non-Taxable Costs (Doc. 224). Plaintiff requests attorney fees of $613,750.00 and non-taxable costs in the amount of $12,541.44.

For the reasons set forth below, the Court determines that Plaintiff is the prevailing party and is entitled to an award of attorneys' fees under 42 U.S.C. § 1988. The amount of the award sought by Plaintiff, however, is substantially reduced due to the non-meritorious claims set forth that were not sufficiently related to the claims on which she prevailed, and due to Plaintiff's fairly-limited success on the claims on which she did prevail. The Court further grants a small award to Defendants for prevailing on the state

law contract claims under A.R.S. § 12-341.01 that is further deducted from the amount of fees otherwise awarded to Plaintiff. The Court thus awards Plaintiff $227,254.25 in attorney fees and $12,541.44 in related non-taxable expenses.

## BACKGROUND

In the underlying case, Plaintiff asserted eight claims against four separate defendants: the Alhambra Elementary School District ("Alhambra"), and three members of its school board—Robert Zamora, Ray Martinez, and Mari Alvarado. Count Seven, a wrongful termination tort claim under A.R.S. § 23-1501 against Alhambra, was dismissed by the Court on summary judgment. Counts Six and Eight, alleging breach of contract and breach of covenant of good faith and fair dealing against Alhambra, were dismissed pursuant to Defendants' Rule 50 Motion for Judgment, as were Counts Four and Five—alleging violations of 42 U.S.C. § 1983 and 42 U.S.C. § 1981—against Defendant Alvarado. At trial, Defendants obtained jury verdicts in their favor on Counts One and Two, which alleged race/national origin discrimination in violation of Title VII against Alhambra. Defendants Zamora and Alhambra further obtained jury verdicts in their favor on Counts Four and Five.

The jury found Defendant Martinez liable on both Counts Four and Five and assessed $198,763.00 in compensatory damages and $5,000 in punitive damages. Further, on Count Three, which alleged retaliation in violation of Title VII against Alhambra, the jury found for Plaintiff and awarded the same amount—$198,763.00—in compensatory damages. The Court awarded back-pay and prejudgment interest to Plaintiff on this claim in the amount of $37,992.06. Both Defendants and Plaintiffs now claim status as prevailing parties and seek an award of their attorney fees and costs.

## DISCUSSION

### I. Plaintiff's Entitlement to a Fee Award

42 U.S.C. § 2000e(5)(k) provides: "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs." "A plaintiff must be a 'prevailing

party' to recover an attorney's fee under § 1988 . . . [and] in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Under one "generous" formulation of this term "that brings the plaintiff only across the statutory threshold," "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Id*.

Here, the jury found Defendant Martinez liable on Plaintiff's race discrimination claims under 42 U.S.C. § 1983 and § 1981 and found Alhambra liable for Plaintiff's retaliation claim under Title VII. These are significant issues for which Plaintiff received the benefit of $198,763.00 in compensatory damages, $5,000.00 in punitive damages, and $37,992.06 in back-pay and prejudgment interest. Under the above formulation, Plaintiff is the prevailing party under the fee statute.

Defendants claim status as the prevailing party due to the judgments entered in Defendants' favor on Plaintiff's remaining claims, which failed either before or during trial. The Court will not award Defendants this status due to Plaintiff's success on significant issues for which she sought relief. However, where a prevailing plaintiff succeeded on only some of her claims for relief, the Court must conduct a two-prong analysis before awarding relief on the unsuccessful claims: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which [s]he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Hensley*, 461 U.S. at 434.

At the first stage, a court must determine whether a plaintiff presents claims for relief that are based on different facts and legal theories such that counsel's work on one claim is unrelated to their work on another claim. *Id*. If work on an unsuccessful claim was not "expended in pursuit of the ultimate result achieved," no fee may be awarded for services on the unsuccessful claim. *Id.* at 434–35; *see also Padgett v. Loventhal*, 706 F.3d 1205, 1209 (9th Cir. 2013) ("Fees for work which relates *only* to unsuccessful claims should not be awarded.").

In *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1499 (9th Cir. 1995), the court found the plaintiff employee's unsuccessful state tort claims to be "'related to' his successful Title VII and section 1981 claims" because they "arose from a common core of facts—his employment relationship with Westin." Because the plaintiff had to present "virtually the same evidence" to prove both his federal discrimination claims and his state tort claims for retaliation, constructive discharge, and wrongful termination, the court held that the course of conduct alleged in his state law claims was not "'entirely distinct and separate' from the course of conduct alleged in [his] Title VII and section 1981 claims." *Id*. Here, Plaintiff's unsuccessful federal discrimination claims against Defendants Alhambra, Zamora, and Martinez similarly required her to present evidence like that prepared for her successful federal claims. By contrast, the claims against Defendant Alvarado did not. There was virtually no evidence admitted at trial on which a discrimination claim could be made against Defendant Alvarado. In this respect, the facts admitted against Defendant Alvarado differed considerably from the testimony presented in support of Plaintiff's successful claims, and no fee award to Plaintiff is appropriate for time spent on the Alvarado claim.

In *Probe v. State Teachers' Retirement System*, 780 F.2d 776, 779 (9th Cir. 1986), the Ninth Circuit affirmed an award of attorney fees on the entire amount of the plaintiffs' litigation expenses despite the dismissal of five of the six original defendants. Noting that "the extent of a plaintiff's success is a crucial factor in determining the proper amount of fees to be awarded," the Ninth Circuit affirmed that, despite the dismissal of the vast majority of the original defendants, no reduction of plaintiffs' attorney fees was warranted because "plaintiffs achieved the major relief they sought in this case—a court decision preventing STRS from using sex-segregated mortality tables in calculating pension benefits."[1] *Id.* at 785. *But see Hensley*, 461 U.S. at 436 ("[T]he District Court's award of

---

[1] The Ninth Circuit summarized the total relief sought by the plaintiffs in the opinion's opening paragraphs: "Plaintiffs brought this action in the district court alleging that STRS violates § 703(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a), by administering an annuity plan that discriminates on the basis of sex. They also alleged that STRS violated the Equal Pay Act, 29 U.S.C. § 206(d), for the same reasons." *Id.* at 779.

fees based on 2,557 hours worked may have been reasonable in light of the substantial relief obtained. But had respondents prevailed on only one of their six general claims . . . a fee award based on the claimed hours clearly would have been excessive."). Similarly, in *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 518 (9th Cir. 2000), the Ninth Circuit affirmed an award of attorney fees to a plaintiff who prevailed on retaliation claims but did not prevail on discrimination claims or a claim for injunctive relief. In affirming the fee award, the court stated that the retaliation claims "were inextricably intertwined with [the plaintiff's] discrimination claims" such that "in order to prevail on her retaliation claims, she had to prove that she reasonably believed that [the defendant] was engaged in discriminatory activity" and "the time spent on her discrimination claims contributed to the success of her retaliation claims." *Id*.

In Plaintiff's case, aside from the Alvarado claim, the remaining successful and unsuccessful federal claims are related enough that they must be assessed under the second *Hensley* question. Claims that proceed to the second stage of the *Hensley* inquiry "will involve a common core of facts or will be based on related legal theories," "making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley*, 461 U.S. at 434. In these cases, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation," *id.*; failure on some claims should not automatically reduce the fee award, *Padgett*, 706 F.3d at 1209. However, if a plaintiff has achieved only partial or limited success,

> the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained.

*Hensley*, 461 U.S. at 436–37.

Unlike the *Passatino* plaintiff, Plaintiff did not achieve a substantial portion of the benefit she sought, nor did Plaintiff achieve a multi-million-dollar verdict. The verdict rendered here was considerably more modest than the verdict Williams sought, particularly

when evaluated in light of Plaintiff's lowest pretrial settlement demand. The facts as known by Plaintiff and set forth at trial served to limit the scope of Plaintiff's possible recovery even if liability was ultimately established on one or more of her claims.

As the Court set forth in its award of back-pay, Plaintiff's retirement and pension benefits, which she was entitled to claim upon her termination of state employ, exceeded the salary Plaintiff would have drawn had she remained with Alhambra. It may, therefore, not have been unreasonable for Plaintiff to limit her search for post-Alhambra employment to administration outside of state-sponsored education; however, those restrictions limited her ability to lay out a strong equitable case for significant back-pay. (Doc 219 at 2, 5-6). Moreover, for the reasons also previously set forth by the Court in its ruling on the front-pay award, the evidence did not support Plaintiff's argument that she would have worked an additional six years for the school district in the absence of retaliation. (*Id.* at 3-4). She was, then, as the Court determined, not entitled to an award of front-pay, and the period of her back-pay claim was limited.

The balance of damages sought by Plaintiff was thus limited to compensatory and punitive damages. Although the compensatory damages she was awarded for retaliation equaled one year's salary and were thus not inconsequential and merit deeming her the prevailing party for the purposes of a fee award, they were not large in proportion to either the verdict she sought or the attorneys' fees she now seeks. Further, while Plaintiff still maintained at trial a claim for punitive damages against Alhambra and Defendants Zamora and Martinez on some of the claims that went to the jury, the jury only awarded her punitive damages—in a fairly modest amount of $5000.00—against Defendant Martinez. A case like this one, in which Plaintiff received a pension and other benefits upon her termination which exceeded her salary, does not provide a compelling case for a large punitive damages award. Yet Plaintiff's lowest settlement demand and request for damages remained approximately four times more the sum of the amount awarded.[2] Thus, the Court will

---

[2] According to Defendants,

"[t]he parties attempted private mediation on August 23, 2017. It failed when

1  reduce the fees requested on the remaining federal law claims from the baseline calculation
2  of "hours reasonably expended on the litigation as a whole times a reasonable hourly rate."
3  *Hensley*, 461 U.S. at 436.

4        Similarly, the Court determines that Plaintiff's state contract claims were not
5  intertwined with her other ultimately successful claims, and thus Plaintiff is not entitled to
6  fees for her pursuit of those claims. To be sure, the retaliation, discrimination, and breach
7  of contract claims all rested on the fact that Plaintiff's employment relationship with
8  Alhambra did not continue through the 2015-16 school year. But unlike the retaliation and
9  discrimination claims, the breach of contract claims required Plaintiff to prove that her
10 contract had been renewed for the subject period, and that Alhambra was in breach of
11 contract for the termination of the employment relationship. Such proof of a renewed
12 contract was not required for a discrimination or retaliation claim. Thus, unlike the *Odima*
13 plaintiff, Plaintiff did not present "virtually the same evidence" to prove both the contract
14 claims and the federal claims. 53 F.3d at 1499. Nor did she have to prove that Defendants
15 engaged in discriminatory activity to prove her contract claims, like the plaintiff in
16 *Passatino*. Much of Plaintiff's time expended on her contract claims involved her attempt
17 to prove the existence of a contract, which was unrelated to her litigation of the rest of her
18 claims. Accordingly, no fee may be awarded for her services on the contract claims.

> Plaintiff's best offer was $1,450,000. Approximately a year before trial, Plaintiff increased her demand to $4,500,000. Then, about six weeks before trial started, Plaintiff rejected Defendants' offer to settle for $250,000 (more than she recovered at trial). Plaintiff's best settlement offer was $1,100,000 which she made on April 12, 2019 while stating that amount would increase $100,000 per week thereafter if it was not accepted within the few days it remained open." (Doc. 221 at 8.) According to Plaintiff, "[f]rom the time the lawsuit was filed until after the Court ruled against Defendants on their motion for summary judgment, the highest settlement offer Defendants made was $50,000, *inclusive* of attorneys' fees and costs. If she accepted, after deducting attorneys' fees and costs, Dr. Williams would have been a net financial loser. Approximately two months before trial, Dr. Williams reduced her settlement position from 4.5 million to 1.1 million. Defendants declined and presented an offer of $250,000 inclusive of fees and costs. If she accepted, after deducting attorneys' fees and costs, Dr. Williams' take home would have been close to zero. . . . Had Defendants offered Plaintiff $250,000 earlier in this litigation, before incurring a dozen's worth of deposition expenses and engaging in substantial fact discovery, the case would have likely resolved."

(Doc. 227 at 8.)

## II.     Defendants' Entitlement to Fee Award

Pursuant to A.R.S. § 12-341.01, a court may award "the successful party . . . in any contested action arising out of a contract, express or implied, reasonable attorney fees." Defendants argue that under this statute, their defense against Plaintiff's claims of breach of contract and breach of covenant of good faith and fair dealing, which were dismissed at trial pursuant to Defendants' Rule 50 Motion for Judgment, entitles them to recovery for amounts spent defending that claim. In her opposition, Plaintiff appropriately cites *Harris v. Maricopa County Superior Court*, 631 F.3d 963, 973 (9th Cir. 2011), for the proposition that the only fees attributable to Plaintiff's contracts claims for purposes of § 12.341.01(A) are those that Defendants "are able to demonstrate would not have been incurred but for the inclusion of those [contract] claims in the complaint." Reaffirming longstanding federal and Arizona policy, the *Harris* court held that "it is impermissible to require a plaintiff to pay fees that a prevailing defendant incurred in whole or in part defending against nonfrivolous civil rights claims." *Id.* at 972. Thus, the only fees attributable to Harris' contracts claims for purposes of § 12.341.01(A) were "those that the defendants are able to demonstrate would not have been incurred but for the inclusion of those claims in the complaint." *Id.* at 972–73. Consequently, while the circuit court found no abuse of discretion in the district court's preliminary decision to award fees for Harris' claims for breach of contract and the duty of good faith and fair dealing under A.R.S. § 12–341.01, the circuit court nevertheless vacated the award of fees in connection with these claims because the district court did not ensure that the fees determined under A.R.S. § 12–341.01 included *only* "fees for legal work that was not performed in whole or in part in order to defend against the nonfrivolous civil rights claims." *Id.* at 974–75.

Contrary to the argument of Defendants, the holding of *Harris* did not depend on the nature of the contract at issue; thus, it is of no consequence that Plaintiff had a written contract. Defendants also argue that *Harris* is weakened by language in *Fox v. Vice*, 563 U.S. 826, 838 (2011), permitting trial courts to "take into account their overall sense of a suit and . . . use estimates in calculating and allocating an attorney's time." But as the *Fox*

Court clearly noted, this flexibility does not abrogate a trial court's mandate to "apply the correct standard." *Id.* In *Fox*, the Court determined the extent to which a court may award fees to a defendant under 42 U.S.C. § 1988 when a plaintiff asserts both frivolous and non-frivolous civil rights claims. *Id*. at 832. The Court held that "Section 1988 allows a defendant to recover reasonable attorney's fees incurred because of, but only because of, a frivolous claim. . . . [T]he dispositive question is not whether attorney costs at all relate to a non-frivolous claim, but whether the costs would have been incurred in the absence of the frivolous allegation. The answers to those inquiries will usually track each other, but when they diverge, it is the second that matters." *Id.* at 836, 838.[3]

Defendants argue that a substantial portion of their case was devoted to the contract claims "which were discreet and separate from the federal civil rights claims." (Doc. 221 at 3.) Defendants assert that $2,902.00 of their requested fees were expended *only* on state law contract claims. (Doc. 221-2 at 12.) Defendants can recover this amount if A.R.S. § 12-341.01(A) supports such an award. In *Associated Indemnity Corp. v. Warner*, 143 Ariz. 567, 694 P.2d 1181 (1985), the Arizona Supreme Court provided several factors to help determine whether attorney fees should be granted under that statute: 1) the merits of the claim or defense presented by the unsuccessful party; 2) whether the litigation could have been avoided or settled and the successful party's efforts were completely superfluous in achieving the result; 3) whether assessing fees against the unsuccessful party would cause

---

[3] The *Fox* Court provided several examples to illustrate this point:

> Suppose, for example, that a defendant's attorney conducts a deposition on matters relevant to both a frivolous and a non-frivolous claim—and more, that the lawyer would have taken and committed the same time to this deposition even if the case had involved only the non-frivolous allegation. In that circumstance, the . . . defendant would have incurred the expense in any event; he has suffered no incremental harm from the frivolous claim. . . . If an attorney performs work useful to defending against both [frivolous and non-frivolous claims], but did so only because of the defendant's monetary exposure on the frivolous charge, a court may decide to shift fees. Or similarly, imagine that the frivolous claim enables removal of the case to federal court, which in turn drives up litigation expenses. Here too, our standard would permit awarding fees for work relevant to both claims in order to reflect the increased costs (if any) of the federal forum.

*Id.* at 836–38.

- 9 -

an extreme hardship; 4) whether the successful party prevailed with respect to all of the relief sought; 5) the novelty of the legal question presented, and whether such claim or defense has previously been adjudicated in this jurisdiction; and 6), whether the award would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for substantial amounts of attorney fees.

Defendants are entitled to recover under the *Associated Indemnity* factors. Although Defendants were not successful on every claim, they prevailed on all state contract claims. Moreover, Plaintiff's contract claims lacked merit and were even frivolous. Although there was no question that the collateral source rule did not apply to contract claims, Plaintiff sought recovery for damages under breach of contract and breach of covenant of good faith and fair dealing even though her pension provided for higher compensation than a renewed contract would have. Thus, in its Rule 50 determination, the Court found that Plaintiff had experienced no damage at all related to her contract claim. Finally, the Court is not persuaded that a fee award would discourage other similarly situated plaintiffs with tenable claims from litigating. The Court will award Defendants the $2,902.00 of their requested fees that were expended exclusively on state law contract claims.

Defendants also seek a fee award for the federal claims on which they successful. However, as addressed in Section I, Defendants are not the prevailing party in this case and therefore cannot receive a fee award on the federal claims. *See* 42 U.S.C.A. § 1988 ("In any action or proceeding to enforce a provision of sections 1981 [or] . . . 1983 . . . the court, in its discretion, may allow the *prevailing party* . . . a reasonable attorney's fee as part of the costs.").

### III.     Fee Calculation

Even with the direction provided by the two-step *Hensley* test, ultimately, "[t]here is no precise rule or formula for making [attorney fee] determinations." *Hensley*, 461 U.S. at 437. The bottom line is that the Court must "provide a concise but clear explanation of its reasons for the fee award." *Id*. And where courts deviate from the basic formula of "the

number of hours reasonably expanded on the litigation multiplied by a reasonable hourly rate . . . on the basis of either the exceptional or limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." Id. at 433, 437.

In the Ninth Circuit, district courts must "consider[,] in the balancing process required in a determination of reasonable attorney's fees," the twelve factors outlined in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975): "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." Plaintiff addresses each of these factors in her motion; however, in their opposition, Defendants focus on the reasonableness of the time Plaintiff spent on the case:

> Plaintiffs' counsel took too much time on many tasks. For example: they prepared a complaint only to amend it. Opposing the motion for summary judgment on the contract and Alvarado issues was useless and wasteful; and retaining and meeting with an expert psychologist (Dr. Brady Wilson) who they never called at trial was truly wasteful. Additionally, their hide-the-ball approach of listing hundreds of exhibits (that were not offered) and dozens of witnesses (that were not called) was wasteful and inefficient, if not misleading, and should not be rewarded. The retention of Mr. Shields was wasteful. . . . If Mr. Zoldan truly has the expertise in the practice area that he asserts, the addition of Mr. Shields was redundant and wasteful. . . . By Mr. Zoldan's own declaration Mr. Shields was not needed as Mr. Zoldan contends he and his firm were supremely qualified to represent Dr. Williams. Plaintiff's counsel in support of the argument that the handling of this case satisfies the Kerr Test contends he had to forego other work as a result of his representation of Plaintiff. However, in the weeks (April-May 2019) leading up to the trial Mr. Zoldan's firm filed no less than four employment lawsuits in the U.S. District Court for the District of Arizona – Phoenix alone.

(Doc. 226 at 10–11.) Plaintiff responds that "it would be imprudent for a single attorney to litigate a jury trial of this magnitude and scale," and that hiring Mr. Shields only "demonstrates the resources Dr. Williams was forced to expend in order to compete with

the resources of an entire school district." (Doc. 230 at 8–9.)

Mr. Shields provided skill and expertise that was necessary in preparation for and during Plaintiff's trial. However, as the Court has previously discussed at length, the Court agrees that some tasks undertaken by Plaintiff's counsel were wasteful in that they were performed in furtherance of meritless claims and claims that were ultimately unsuccessful. As Plaintiff acknowledges, where, as here, a plaintiff does not prevail on all claims, courts may reduce a requested fee award if the plaintiff "did [not] . . . achieve a level of success that makes the hours reasonably expended a satisfactory basis" for making such an award. *Hensley*, 461 U.S. at 434–35. The Court therefore finds it appropriate to depart from Plaintiff's "lodestar" calculation—"the number of hours reasonably expanded on the litigation multiplied by a reasonable hourly rate"—"on the basis of . . . the limited nature of the relief obtained by the plaintiff." *Id.* at 437. In making the difficult determination of the exact amount by which to depart, the Court has "take[n] into account [its] overall sense of a suit and . . . use[d] estimates in calculating and allocating an attorney's time," as it is permitted to do. *Fox*, 563 U.S. at 838. Thus, beginning with Plaintiff's lodestar attorney fee calculation of $613,750.00, the Court will deduct one quarter of that amount, $153,437.50, to account for an estimate of the time Plaintiff's counsel expended on the meritless contract claims. The Court will then divide the remaining amount, $460,312.50, in half to account for Plaintiff's relatively low rate of success taking all her claims into consideration. From that amount, $230,156.25, the Court will further deduct the fees expended by Defendants exclusively on preparation for the contracts claims—$2,902.00. Plaintiffs are therefore entitled to recover $227,254.25 in attorney fees and $12,541.44 in non-taxable costs.

## CONCLUSION

The Court agrees that Plaintiff prevailed on significant issues for which she received a substantial benefit and should be awarded attorney fees. However, Plaintiff's award must be reduced because of her relatively low degree of success taking all claims into consideration, and the extent to which she did not prevail on claims that were not

intertwined with the claims on which she did prevail. Moreover, Defendant is entitled to attorney fees on Plaintiff's state law contract claims because these claims were without merit. For ease of administration, the Court will apply this award as an offset to Plaintiff's fee award instead of awarding separate attorney fee to Defendants.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Attorneys' Fees and Non-Taxable Expenses (Doc. 221.) is **GRANTED IN PART** and **DENIED IN PART.** The Court awards Defendants $2,902.00 in attorney fees, which will be applied as an offset to Plaintiff's fee award instead of a separate attorney fee award.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Attorneys' Fees and Related Non-Taxable Costs (Doc. 224.) is **GRANTED IN PART** and **DENIED IN PART.** The Court awards $227,254.25 in attorney fees and $12,541.44 in related non-taxable expenses.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment in the amount of $227,254.25 in attorney fees and $12,541.44 in related non-taxable expenses plus interest at the rate of 1.57% from the date of judgment until paid, in favor of Plaintiff and against Defendants, and terminate this case.

Dated this 11th day of December, 2019.

_G. Murray Snow_
G. Murray Snow
Chief United States District Judge